## UNITED STATES v. GOO.
### Cr. No. 10284.

United States District Court
D. Hawaii.

May 31, 1950.
Judgment Affirmed Feb. 9, 1951.
See 187 F.2d 62.

See, also, 10 F.R.D. 337.

Ray J. O'Brien, U. S. Atty., District of Hawaii, Howard Hoddick, Asst. U. S. Atty., District of Hawaii, Nat Richardson, Jr., Asst. U. S. Atty., District of Hawaii, all of Honolulu, T. H., for plaintiff.

Robertson, Castle & Anthony, J. Garner Anthony, Peter A. Lee, all of Honolulu, T. H., for defendant.

McLAUGHLIN, Judge.

On February 9, 1950, the defendant, represented by two attorneys, Harry Hewitt, Esq., and John Alexander, Esq., of the firm of Hewitt & Alexander, appeared in Court, and when the Government announced its desire to file three felony charges against the defendant in the form of an information the defendant waived his constitutional right and consented to the filing of the charges in that form.

Immediately thereafter defense counsel informed the Court that the defendant waived reading of the information, and was ready to plead. (As will appear infra, the defendant and his attorneys had had for some time in advance a copy of the information.) Thereupon the defendant arose and when asked by the presiding judge regarding his plea as to each count, the defendant replied as to each count that he was guilty.

The three pleas were recorded and the defendant adjudged guilty on each charge.

The Court then called upon the Government for a statement of the facts, after which it gave the defendant an opportunity to be heard. Through his attorney, the defendant stated he had no excuses or explanations to offer. The defendant himself remained silent.

A pre-sentence investigation was ordered by the Court, the due date of which was set as February 20, 1950. At the same time the Court stated that the defendant might do well to consider during the interval the matter of discharging his civil liability. The Court admonished the defendant, however, that it should be recognized that this judge usually sent tax dodgers to prison and that payment of the taxes and penalties on the civil side was not to be taken as an assurance that the defendant would not be sentenced to prison. The defense represented that it would, pending the arrival of the date set for sentence, look into the civil tax aspects of the case.

Within a few days, the defendant in person, without either of his attorneys, appeared in this Judge's chambers desirous of seeing the Judge about his case. His request was refused. Still a bit later the Court received a telephone call from a friend who had been requested to see if he could intercede in the defendant's behalf. The Court refused to listen.

Within a day or so the defendant discharged his attorneys, and they were excused by the Court. The Court was then notified that Attorney Peter Lee and Attorney Garner Anthony, of the firm of Robertson, Castle & Anthony, would enter appearances for the defendant, and the Court consented to the new attorneys' assuming the responsibility for defendant's presence in Court on the date scheduled for sentence.

On that date, February 20, 1950, the new attorneys appeared in Court with the defendant and requested (1) that the defendant be allowed to withdraw his pleas and (2) that since the attorneys had only recently been called into the case, time to check into the matter of the defendant's civil liability. The first request was denied, while the second was granted to March 13, 1950, and the prior admonition of the Court

as to its customary type of sentence in a tax case was repeated.

Before the arrival of the new date for sentence, the defendant, acting through his attorney, Alfred L. Castle, represented that it was essential that more time be granted as the civil liability question required that the defendant employ an accountant to make an audit, especially since the Government had lost some of defendant's canceled checks. The United States Attorney consenting, more time was granted to March 27, 1950.

Near the expiration of this third period of time to consider payment of the civil liability, Attorneys Anthony and Lee represented that there had been turned up a $23,000 carry back item of loss which might result in there being no tax for the years 1946 and possibly 1945 and 1944, but that the Government would not accept it; hence more time was again needed. Having from the outset directed the Government to cooperate with the defendant if he was disposed to settle his civil liability, the Court stated it would grant more time if the Government agreed. Assistant United States Attorney Ingman, acting in the absence of Assistant Hoddick who handled the case, said he would confer with the Internal Revenue people and report. This he did, reporting that there was no sense to granting still more time, and its reasons relating to the $23,000 matter, and others, would gladly be recited at a conference with defendant's counsel.

The Court directed that defendant's counsel Anthony be telephoned and notified of the Government's report. This was done by Assistant United States Attorney Richardson, to whom Mr. Anthony abruptly stated that there was no point to a conference to hear the Government's reasons, and that therefore he would proceed to file a motion.

The motion turned out to be the one now under consideration, a motion to withdraw the pleas of guilty and to plead anew as not guilty. The motion was accompanied by an affidavit of the defendant, Attorney Castle, the defendant's accountant, and Attorney Anthony.

The date for hearing the motion was twice changed for cause, first at the Government's request and then at Attorney Anthony's request.

Finally, the motion came on for hearing on May 16.

Though on February 20 an oral motion of like nature had been denied, the proportions of this formal motion dictated that the matter be considered again.

■ The defendant first argued that under Rule 32, Federal Rules of Criminal Procedure, 18 U.S.C.A., the motion must be granted as a matter of right. This the Court denied, holding that disposition of the matter rested in the area of judicial discretion. United States v. Searle, 7 Cir., 1950, 180 F.2d 209. See generally Taylor v. United States, 9 Cir., 1950, 179 F.2d 640, and especially the second petition for rehearing, 182 F.2d 473, May 23, 1950, by the United States Court of Appeals for the Ninth Circuit.

Next it was contended the four affidavits should move the Court to grant the motion.

The Court pointed out that the only relevant affidavit was the defendant's, and that stated only conclusions. A recess was taken to allow the defendant to decide if he wished to submit evidence in support of his factual conclusions.

After the recess the defendant took the witness stand. He testified on direct examination that he had employed Hewitt & Alexander after receiving a letter from the Department of Justice. This he said was but a few days before pleading on February 9. He further said that he talked to Hewitt several times about his plea and the amount of the tax stated in the information (this, of course, was before it was filed in Court), and that Hewitt told him, " * * * I am guilty even if I owed them $1, I am guilty just the same, so it is best to plead guilty"; that Hewitt never talked to defendant's bookkeeper, nor did he recommend hiring an accountant, and made no investigation prior to the date defendant plead guilty. The defendant said he had never been in Court before; that Hewitt said the information stated all the taxes he owed—but after the plea said he

owed more than that (civil liability). Goo said Hewitt advised him to plead guilty, as he said, "I have no other alternative but plead guilty" and that if he argued about entering "a plea" the Court, "* * * he say he put me a long-term sentence * * * the best for me to do is keep my mouth shut, not to say anything." The defendant added that after plea, his accountants had discovered errors made by the United States, especially a $23,000 item of which he was ignorant when he plead guilty; that Hewitt said that could be taken up with the Internal Revenue. Goo restated that he plead guilty because, "Mr. Hewitt told me to plead guilty in this case." When asked the basis of his "fear, ignorance and confusion" stated in his affidavit, Goo said, "Well, according to my attorney told me that it is best for me to plead guilty rather than saying anything at all. If I do, why I going to be sentenced to a long-term prison." so he decided to follow his advice.

Upon cross-examination Goo admitted that he received the Department of Justice tax letter in January, employed Hewitt & Alexander and took advantage January 19 of the hearing which the Government offered. At the administrative hearing, defendant and his counsel were present, were given an opportunity to examine Goo's records which were in the Government's custody, and did so, the invitation to inspect them being one which continued even after the hearing. When asked if after the administrative hearing and at a conference in the United States Attorney's office Hewitt had not explained to Goo the difference between criminal and civil tax liability, and if he did not recall the Government then and there telling him his civil liability was between thirty five and forty thousand dollars, the defendant testified, "No, I don't. * * * I don't remember that, but I asked, * * * 'Is that all the amount owing in the affidavit?', he say, 'Yes, it is plainly written there.'" He again denied remembering being told by the Government the amount of his civil liability. Asked if his "fear" did arise after he heard the Court's statement after he had plead guilty, Goo said—twice breaking into the question, "Before that. * * *

Before that. * * * No, the fear was before that when Attorney Hewitt told me best for me to plead guilty. I told him, 'That is not the amount I am owing, $7,400 or $7,500.' He told me even if I am owing one dollar, I am guilty just the same, so it is best not to argue about it, that is, to keep my mouth shut." Goo also denied remembering a second conference with his attorneys and Government counsel before the information was filed, at which again civil liability was distinguished from criminal, and he further denied remembering that at said conference his assets were listed to see if he could pay his civil liability. Goo claimed such occurred after his pleas, and after he discharged Hewitt & Alexander and employed new attorneys.

■ The defense thereupon rested, and the Government called in opposition subpoenaed witness Attorney Harry Hewitt. The defendant promptly claimed that Attorney Hewitt could not testify because the defendant claimed the attorney-client privilege and had not waived it by himself testifying.

The Government, relying upon Hunt v. Blackburn, 1888, 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488, submitted (1) that the defendant waived his privilege by failing the motion charging his former attorneys with unprofessional conduct, and (2) clearly by testifying.

After due consideration of the tense point, the Court, citing Cooper v. United States, 6 Cir., 1925, 5 F.2d 824, ruled (1) it was not satisfied that the defendant's affidavit explicitly or clearly charged Hewitt and Alexander with unprofessional conduct, but (2) he did so in his testimony and (3) had also waived the privilege by putting in issue the exact nature of his former attorney's advice.

Accordingly, holding that the defendant by his testimony had waived his privilege, the Court allowed Hewitt to testify as to, and only as to, the advice he had given the defendant, excluding any facts coming to his knowledge from the defendant under the attorney-client relationship.

Attorney Hewitt testified that he had practiced law for thirty years, had had

some tax law experience, and had been hired by Goo when the defendant received the Department of Justice letter in January, that an administrative hearing with the tax officials was had, with the defendant and his bookkeeper present, and they had an opportunity to examine defendant's books. Hewitt testified that after the hearing, at Hewitt's office, with Attorney Alexander present, he said to Goo, "Alfred, how are you going to explain all of that?" whereupon the defendant threw up his hands and said, "It is no use. I might as well give up." Hewitt stated he then asked the defendant, "Do you mean plead guilty?" to which Goo said, "Yes." That occurred January 20, and at no time thereafter did Goo indicate that he had changed his mind about what he should do; indeed, "it never was discussed again, that is, in the way of any doubt in his mind as to what he should do." Hewitt stated that the Government gave him an advance copy of the information on February 6, which he at once gave to Goo, who asked to take it overnight and to discuss it with his bookkeeper; that when Goo brought it back he was asked if he had any complaint as to it, or if he had any defense to it, to which he said, "No." Hewitt also testified that prior to plea there was a discussion of Goo's civil liability, that Goo when told at the conference that it was thirty five to forty thousand dollars did object that it couldn't be so high and that then and there Hewitt broke it down for him into tax and penalty and interest for the three years involved, and that Goo's assets were counted up to see if he could pay the civil bill. Hewitt denied ever telling Goo that if he argued about pleading he would get a long sentence.

Upon cross-examination Hewitt was not examined as to his direct testimony, but an endeavor was made to reveal that Hewitt talked to the Government about this motion, before its hearing, without Goo having released him from the bond of the client's privilege. Hewitt took the position that the affidavits annexed to the motion charged him with unprofessional conduct, and hence the mere filing of such by Goo was a waiver of the privilege.

A similar situation arose when subpoenaed witness Alexander was called to testify. The Court ruled the same way, and Alexander also testified. Although an endeavor was made by way of argument to claim Alexander contradicted Hewitt, the argument finds no support in the record unless one purposely chooses to ignore the time factor or the substance of the testimony of each. Alexander was asked by Government counsel if he or Hewitt recommended to the defendant that he should enter a plea of guilty. Alexander answered, "We did, but if I may—* * * The circumstances were made after we had on several occasions attempted to elicit from the defendant an explanation of certain matters which appeared to us to be extremely condemning and extremely serious and he had refused, or failed to produce the names of witnesses or any evidence which would enable us to defend him on charges." Asked if the defendant said anything about pleading, Alexander said, "I don't recall his exact statement at any time, other than I do recall his saying some words to the effect of: Well, what is the use? Or words to that effect." Alexander also denied ever telling Goo to keep his mouth shut else he might go to prison for a long term, and in sum clearly described the situation as had Hewitt, especially as to Goo's knowing the difference between his criminal and civil tax liability.

William J. Doherty of the Internal Revenue Intelligence Unit testified corroborating Hewitt and Alexander as to details of the administrative hearing and conferences attended by the defendant.

The defendant presented no rebuttal.

Thereupon the parties argued the motion. During the argument the Court pointed out to defense counsel that the motion would have at least "smelled sweeter" if defendant had not endeavored to talk to the Court (supra) or had not had a person try to intercede with the Judge for him (supra).

At the end of the argument, passing over much that might have been said, the Court announced its ruling that the defend-

ant had provided no basis upon which the Court could exercise its discretion in favor of the motion; therefore it was denied. June 1 was set for sentence, and the matter of the civil liability referred to again in the same language as had been used twice before—save that June 1 was fixed as the final date.