**GOLDMAN, SACHS & CO., Plaintiff,**

v.

**Ernest R. BLONDIS, M.D., Defendant.**

**No. 74 C 1598.**

United States District Court,
N. D. Illinois, E. D.

May 7, 1976.

Memorandum

LEIGHTON, District Judge.

### I.

This litigation is the outgrowth of a controversy between a New York stock broker and an Illinois owner of 23,000 shares of Bucyrus-Erie common stock. In a three-count complaint based on claimed violations of the Securities Exchange Act of 1934 and a breach of contract, it is alleged by the broker that the owner had instructed it to sell the shares but later refused to make delivery of the certificates. The issue before the court, however, arises from a motion by the broker to compel the owner's former lawyer to give a deposition and answer questions concerning a December 5, 1973 conversation he had with the owner, and confirm or deny the dates of certain other conversations. On March 17, 1975, another judge of this court ruled that in a deposition the owner had waived the attorney-client privilege with regard to the December 5, 1973 conversation. The question before the court, therefore, is the extent to which the privilege was waived, and the limit of the interrogation to which the lawyer, Louis L. Dent, Esq., can be subjected at his deposition. Mr. Dent has appeared in these proceedings and has stated he will abide by this court's ruling.

### II.

On October 24, 1974, the defendant, Ernest R. Blondis, appeared for a deposition at the offices of plaintiff's attorneys. During the questioning, the inquiry focused on December 5, 1973 concerning which he was asked whether he spoke to anyone other than an employee of the plaintiff concerning the Bucyrus-Erie stock. Blondis answered, saying that he called his lawyer, Louis L. Dent, and informed him of his conversation with plaintiff's employee. Then, Blondis related the substance of certain statements made to him by Mr. Dent. Later in the deposition, Blondis disclosed that he had conversations concerning the

James G. Hunter and Barbara B. Lounsbury, Kirkland & Ellis, Chicago, Ill., for plaintiff.

John C. Hendrickson, Chicago, Ill., for defendant.

stock with Mr. Dent on December 6, 7, 8 and 10, 1973, but he did not relate their substance. Shortly thereafter, plaintiff served notice that it wanted to take a deposition of Mr. Dent. This notice has brought before the court the question to be resolved.

### III.

▮ In disposing of this question, it must be remembered that by a long established and honored rule of the common law, embodied in the statutes of many states, an attorney should not, and cannot be, compelled to, testify regarding communications made to him in his professional character by his client. See 8 Wigmore on Evidence §§ 2290, 2291 (McNaughton rev. ed. 1961); McCormick on Evidence § 87 (2d ed. 1972); *Chirac v. Reinicker,* 24 U.S. (11 Wheat.) 280, 294, 6 L.Ed. 474, 477 (1826); *Republic Gear v. Borg-Warner Corp.,* 381 F.2d 551 (2d Cir. 1967). In the absence of a contrary statute, however, the right to prohibit disclosure of such communications belongs not to the attorney but to the client and may be waived by him. See 97 C.J.S. Witnesses § 307 *et seq.;* 81 Am.Jur.2d § 223 et seq.; *In re Langswager,* 392 F.Supp. 783 (N.D.Ill.1975).

▮ From the concept of waiver, the rule has developed that one entitled to the attorney-client privilege may not disclose part of a privileged communication and withhold the remainder. Thus, according to Wigmore, "[t]estimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter. This is so because the privilege of secret consultation is intended only as an incidental means of defense and not as an independent means of attack, and to use it in the latter character is to abandon it in the former." 8 Wigmore on Evidence § 2327 at 638 (McNaughton rev. ed. 1961). Therefore, it is a uniform rule that when a party's conduct reaches a certain point of disclosure, fairness requires that the privilege cease, whether or not this is the result intended. A party cannot, after revealing as much as he pleases, be allowed to withhold the remainder of what he dis-

closes. *Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.,* 62 F.R.D. 454, 457 (N.D. Ill.1975).

▮ Although a majority of the cases which treat the question of waiver involve the impact of testimonial conduct, see Annot., 51 A.L.R.2d 521, it has been held that the attorney-client privilege may be waived by testimony of the client in an examination before trial. See *Wild v. Payson,* 7 F.R.D. 495 (S.D.N.Y.1946). This does not mean, however, that voluntary disclosure of confidential information effectively waives the privilege as to all conversations, or the whole breadth of discussion which may have taken place. See *Magida v. Continental Can Co.,* 12 F.R.D. 74, 77 (S.D.N.Y.1951); compare *Chore-Time Equipment, Inc. v. Big Dutchman, Inc.,* 258 F.Supp. 233 (W.D.Mich. 1966). In deciding what must be disclosed because of the waiver resulting from partial disclosure, reference must be made to the objectives of the attorney-client privilege and the qualification. *International Business Machines v. Sperry Rand Corp.,* 44 F.R.D. 10 (Del.1968).

### IV.

▮ In this case, when Blondis gave his deposition, and concerning the December 5 conversation with his lawyer, he made the following disclosure:

"I immediately called Mr. Dent. I told him what had happened. He said, 'Well, you had better disabuse those people, if there is any misunderstanding, because the stock—'—he said he never said that the stock was not restricted, in spite of the fact that there was no legend, and that Mr. Dixon had never approached him to find out if the stock was restricted or not or to find out how to get it unrestricted. Mr. Dixon had not called him at all."

\* \* \* \* \* \*

"Q. What did you say to Mr. Dent at this time?

A. Well, I told him I would try to call them back and tell them what he had said and tell them to call him again.

Q. What did he say to you?

A. That is all.

Q. Is that the end of the conversation?

A. He told me to call him back after I talked to them."

Based upon this disclosure, therefore, the court is of the view that the waiver must be construed as limited to that specific subject during that particular conversation. This narrow reading of the scope of the waiver will, in the court's judgment, promote the fairness which the partial disclosure qualification is designed to encourage while serving the compelling public policy considerations underlying the attorney-client privilege.

As to other conversations between Blondis and his lawyer, Blondis testified that he had conversations concerning the Bucyrus-Erie stock with his lawyer on December 6, 7, 8 and 10 of 1973. The general rule is that it is the substance of conversations which is protected, not the fact that they occurred. See *United States v. Kendrick,* 331 F.2d 110 (4th Cir. 1964); *Lee National Corp. v. Deramus,* 313 F.Supp. 224 (Del. 1970). Indeed, plaintiff does not contend that the subject matter of those conversations is subject to disclosure. Accordingly, the waiver must be construed as limited solely to whether the specific subject of the Bucyrus-Erie stock was or was not discussed on those particular dates.

Therefore, Louis L. Dent, the former lawyer for defendant Blondis, may be asked questions concerning the conversation of December 5th to the extent that the conversation concerned the Bucyrus-Erie stock and not beyond. Additionally, he may be asked to confirm or deny that he had conversations regarding the Bucyrus-Erie stock with the defendant on the 6th, 7th, 8th and 10th of December, 1973, but he may not be asked about the substance of those conversations.

So ordered.