Ruth PANTER et al., Plaintiffs,

v.

MARSHALL FIELD & CO. et al.,
Defendants, et al.

No. 78 C 537.*

United States District Court,
N. D. Illinois, E. D.

Dec. 19, 1978.

* And consolidated cases Nos. 78–C–537, 78–C–620, 78–C–1179, 78–C–1141, 78–C–1700, 78–C–2556, 78–2067, 78–C–2373 and 78–C–2480.

Robert S. Atkins, Freeman, Atkins & Coleman, Ltd., Chicago, Ill., for plaintiffs' Liaison Counsel.

Hammond E. Chaffetz, Joseph DuCoeur, Alan I. Becker, Howard J. Swibel, Kirkland & Ellis, Chicago, Ill., for defendants Marshall Field & Co., Angelo R. Arena, George G. Rinder and Arthur E. Osborne.

WILL, District Judge.

### PRETRIAL ORDER NO. 6

These consolidated cases arise from a proposed combination and tender offer by Carter Hawley Hale for the purchase of Marshall Field & Co. Carter Hawley Hale, a California based department store retailer, made overtures to Marshall Field's through Marshall Field's board of directors with respect to a possible combination as early as October 1977, and made public its desires on December 12, 1977. Resolving against such a combination, the Marshall Field's board of

directors authorized and filed suit on behalf of Marshall Field's against Carter Hawley Hale in the United States District Court for the Northern District of Illinois alleging that acquisition of Marshall Field's by Carter Hawley Hale would violate Section 7 of the Clayton Act. Press releases and letters in opposition to a proposed combination were also issued. Ultimately, Carter Hawley Hale withdrew its bid to acquire Marshall Field's.

Plaintiffs have brought these consolidated actions as a class action against the defendant Marshall Field & Co., its directors and certain officers for alleged violations of both state and federal law. Specifically, plaintiffs have alleged numerous violations of 15 U.S.C. § 78n(e), which provides, in pertinent part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation,

and breaches of fiduciary duty.

This cause now comes before the Court on plaintiffs' motion for an order compelling the production of 38 documents. For analytic purposes, these 38 documents can be grouped into three categories: (1) documents relating to proposed acquisitions, mergers, or other combinations involving Marshall Field *prior to* the Carter Hawley Hale proposal; (2) documents relating to the proposed Carter Hawley Hale-Marshall Field combination; and (3) documents relating to this or other potential shareholder litigation arising from the Carter Hawley Hale proposal. Defendants seek to protect all of these documents from production on grounds of attorney-client privilege and/or work product privilege and have tendered the documents to us for *in camera* inspection.

For the reasons hereinafter stated, plaintiffs' motion is granted as to all documents requested. All documents produced will be subject to a protective order to be drafted by the parties and approved by the Court.

## ATTORNEY–CLIENT PRIVILEGE

Defendants resist production of 36 of the 38 documents here in question on the ground of attorney-client privilege. In support of their motion to compel, plaintiffs argue that defendants' assertion of the attorney-client privilege as to each of these 36 documents is improper (1) because defendants have heavily relied upon "advice of counsel" as the basis for their actions with respect to the proposed Carter Hawley Hale combination and (2) because defendants occupied a fiduciary relationship with respect to the plaintiff shareholders.

Discovery in these consolidated cases to date has revealed heavy reliance by the defendants upon the "advice of counsel" with respect to the conclusion that a business combination between Carter Hawley Hale and Marshall Field & Co. would violate Section 7 of the Clayton Act, the decision to file the Section 7 suit in the Northern District of Illinois, and the decision to oppose the combination. Plaintiffs have cited numerous examples from the defendants' answers to interrogatories and depositions which indicate such reliance, and urge that defendants have thereby "waived" the attorney-client privilege with respect to all of the documents here sought.

Defendants do not seriously contend that they do not rely heavily upon an "advice of counsel" defense, but rather claim that such reliance only entitles plaintiffs to discovery of the opinions of counsel on the specific question of the illegality under Section 7 of the proposed Carter Hawley Hale-Marshall Field combination. Having already produced such opinions, defendants claim plaintiffs are entitled to no further discovery in the face of their assertions of an attorney-client privilege.

■ We find that, at this stage of this lawsuit, both plaintiffs and defendants

overstate the merits of their respective positions. Where, as here, a party asserts as an essential element of his defense reliance upon the advice of counsel, we believe the party waives the attorney-client privilege with respect to all communications, whether written or oral, to or from counsel concerning the transactions for which counsel's advice was sought. *Broad v. Rockwell International Corp.*, CCH Fed.Sec.L.Rep. ¶ 95,894 (N.D.Tex.1977); *Haymes v. Smith*, 73 F.R.D. 572 (W.D.N.Y.1976); *Garfinkle v. Arcata National Corp.*, 64 F.R.D. 688 (S.D. N.Y.1974); *Smith v. Bentley*, 9 F.R.D. 489 (S.D.N.Y.1949). *See Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602 (2d Cir. 1964); *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926 (N.D.Cal.1976).

Illustrative of the scope of a defendant's waiver of the attorney-client privilege by insertion of "advice of counsel" as a defense to a plaintiff's claims in *Garfinkle v. Arcata National Corp., supra.* In *Garfinkle*, the plaintiff alleged that the defendant corporation had failed to file a registration statement with the Securities and Exchange Commission as required by the stock purchase agreement between plaintiff and the defendant. Arcata National asserted as one defense the opinion of counsel that plaintiff's shares could be sold without registration, and plaintiff sought production of any documents related to the defendant's

counsel's opinion letter. Over the defendant's assertion of attorney-client privilege, the court held:

Defendant has clearly injected the opinion letter into this case as a relevant matter and plaintiff is entitled to probe into the circumstances surrounding the issuance of the letter. He cannot be limited to the letter itself—the finished product. He is entitled to know how the letter came into being. . . .

\* \* \* \* \* \*

[Arcata] has acknowledged its communication with its attorney as a basis for its failure to register the shares and ultimately for the issuance of the opinion letter. *Plaintiff is entitled to all relevant documents bearing on the decision not to register.* [Emphasis added.]

64 F.R.D. at 689–90.

Defendants cite numerous cases which they claim sustain their assertion that a "waiver" of the attorney-client privilege must be construed narrowly. We need not deal with these cases at length in light of the additional, independent ground for ordering production in this case, *see*, pp. 722–724, *infra*. However, all of defendants' cases are distinguishable in that none involves a civil defendant asserting the "advice of counsel" as a substantive defense to claims pressed by plaintiffs.[1]

---

**1.** *Goldman, Sachs & Co. v. Blondis*, 412 F.Supp. 286 (N.D.Ill.1976), the principal case relied upon by defendants, involved a stockbroker's suit against a customer who had initiated a sale of shares, and then refused to make delivery. Reliance upon the advice of counsel would not have been a defense to such a suit, nor is there any indication that the defendant raised it as such. Rather, the waiver issue was presented in the context of plaintiff's seeking to depose the defendant's counsel after the defendant had made a limited disclosure of his conversations with counsel in the defendant's own deposition. Accordingly, the district court narrowly construed the defendant's waiver of the attorney-client privilege. 412 F.Supp. at 288–89. We find no inconsistency between the principles announced in *Goldman, Sachs* and the result reached here.

Of the cases cited by the defendants, only *United States v. Goo*, 10 F.R.D. 332 (D.Hawaii 1950), aff'd, 187 F.2d 62 (9th Cir. 1951), *cert. denied*, 341 U.S. 916, 71 S.Ct. 735, 95 L.Ed.

1351 (1951), is somewhat analogous to the situation presented in this case. In *Goo*, a criminal defendant to federal tax charges moved to withdraw a plea of guilty which he claimed had been entered upon the erroneous advice of his former counsel. At the hearing on defendant's motion, the defendant testified at length as to the substance of his representation by his former attorneys. In response to the defendant's testimony, the United States called the former counsel as witnesses, and the defendant sought to prevent their testifying on grounds of the attorney-client privilege. The court overruled the defendant's contention, finding that the defendant "had also waived the privilege by putting in issue the exact nature of his former attorneys' advice." 10 F.R.D. at 335. The court then allowed the attorneys "to testify as to, and only as to, the advice [they] had given the defendant, excluding any facts coming to [their] knowledge from the defendant under the attorney-client relationship." *Id.*

Accordingly, we find that defendants have waived the attorney-client privilege with respect to the second category, namely, any documents that deal with the efforts of Carter Hawley Hale to accomplish a business combination with Marshall Field & Co., including such documents which bear specifically on the Section 7 suit filed by Marshall Field against Carter Hawley Hale.

Apart from our holding that the assertion of "advice of counsel" as a major substantive defense renders the attorney-client privilege waived with respect to all documents dealing specifically with the proposed merger and tender offer by Carter Hawley Hale, we find independent support for the release of these documents, and of the first category of documents, under the rationale of *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970) and similar cases.

In *Garner*, the Fifth Circuit analyzed the circumstances under which a corporate defendant, being sued by the corporation's own shareholders on grounds of violations of both federal and state securities laws sounding in fraud, could validly assert the attorney-client privilege against requests for discovery. After evaluating the relative benefits and harms from disclosure of the otherwise privileged communications, the court held that there was no automatic bar to the corporation's ability to assert the attorney-client privilege in a shareholder derivative suit. 430 F.2d at 1103. Rather, the court concluded:

> We do not read the court's solicitousness for preventing disclosure of *facts* in the context of a *criminal* case as necessarily based on the court's consideration of the policies underlying the attorney-client privilege; equally plausible would be a desire on the court's part to protect against an unwitting intrusion upon the defendant's fifth amendment privilege. Moreover, the opinion indicates that the attorneys gave broad testimony as to their representation of the criminal defendant. 10 F.R.D. at 335–36. Accordingly, we do not believe *Goo* points to a conclusion opposite to that reached here.

2. The court set forth a number of indicia which might contribute to the presence or absence of good cause:
> the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the

where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

430 F.2d at 1103–04. The court remanded the case to the district court for a determination of whether the plaintiff-shareholders could demonstrate the requisite "good cause" to abrogate the attorney-client privilege.[2]

Plaintiffs argue that cases subsequent to *Garner* have abandoned the requirement that plaintiff-shareholders show "good cause" in order to overcome the corporation's assertion of the attorney-client privilege. We do not agree. In *Bailey v. Meister Brau, Inc.*, 55 F.R.D. 211, 214 n. (N.D.Ill. 1972), the court specifically cited *Garner* for the proposition that "good cause" must be shown, and held that, under the facts of the case, there was "good cause" to require the discovery sought. Similarly, in *Broad v. Rockwell International Corp., supra*, CCH Fed.Sec.L.Rep. ¶ 95,894 at 91,304, the court specifically applied *Garner's* "good cause" requirement, and found that there was good cause for the discovery sought. *See Garner v. Wolfinbarger*, 56 F.R.D. 499, 504 (S.D. Ala.1972). Only in *Valente v. Pepsico*, 68 F.R.D. 361 (D.Del.1975) is there no indication that the plaintiffs are required to show

> shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.
>
> 430 F.2d at 1104.

"good cause." Indeed, the *Valente* court in dicta interpreted the *Garner* requirement as placing the burden on the corporation to demonstrate some special cause:

> where a corporation seeks advice from legal counsel, and the information relates to the subject of a later suit by a minority shareholder in the corporation, the corporation is not entitled to claim the privilege as against its own shareholder, absent some special cause.

68 F.R.D. at 367.

■ In view of the potential benefits and harms which derive from abrogation of the attorney-client privilege in the shareholder suit against the corporation, *see Garner v. Wolfinbarger, supra,* 430 F.2d at 1101–02, we are convinced that requiring the plaintiffs to demonstrate "good cause" is necessary to accommodate the competing interests. To the extent that *Valente* abandons the requirement that plaintiff-shareholders demonstrate "good cause," we disagree with that court's reasoning.

Plaintiffs further argue that, even if the *Garner* "good cause" requirement is found applicable to this case, they have made a sufficient showing of "good cause." We agree, but only with respect to some of the documents here sought.

■ Guided by the indicia of "good cause" set forth in *Garner*, we find that plaintiffs have shown sufficient cause to abrogate the attorney-client privilege under the facts of this case with respect to categories one and two of the documents. These consolidated actions have been joined by roughly 95% of all Marshall Field's shareholders representing approximately 97% of the Marshall Field's stock.[3] Review of the plaintiffs' allegations and of the documents tendered to this Court for *in camera* inspection indicate that plaintiffs' claims based on 15 U.S.C. § 78n(e) and breach of fiduciary duty are "obviously colorable." Further, no argument has been made that the informa-

tion contained in these documents is available to the plaintiffs from other sources.

As to all of the documents prepared prior to the commencement of the *Panter* suit, we find plaintiffs have demonstrated sufficient "good cause" to overcome defendants' assertion of the attorney-client privilege. While the *Garner* court noted two indicia of "good cause" which bear upon the extent of the abrogation of the defendant corporation's attorney-client privilege: (1) "the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources," and (2) "the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing," *Garner v. Wolfinbarger, supra,* 430 F.2d at 1104, neither these indicia nor other considerations require the application here of any "special relevancy" test to determine the extent of the abrogation of the defendants' attorney-client privilege. *Broad v. Rockwell International Corp., supra,* CCH Fed.Sec.L.Rep. ¶ 95,894 at 91,304–05.

All of the pre-*Panter* documents which are the subject of this motion to compel over defendants' assertion of the attorney-client privilege are found to be discoverable. While the possible relevance of some of these documents, such as those concerning a proposed acquisition by Marshall Field in early 1975,[4] may not be immediately apparent, we find them discoverable. Not only may such documents bear upon the defendants' good faith in *seeking* the advice of counsel by illuminating the type and extent of the legal advice which Marshall Field had sought and received with respect to earlier proposed business combinations, they may also illuminate the bona fides of the corporate defendants' *reliance* upon the advice of counsel in positing that certain proposed combinations, but not others, might run afoul of the antitrust laws. Similarly, such documents may bear upon the bona fides of the Marshall Field proposed expansion plans announced in early 1978.

---

3. Counsel for the parties have stated that roughly 19,050 out of 20,000 Marshall Field & Co. shareholders representing approximately 9,700,000 out of the 10,000,000 shares have

remained as class members in the instant litigation.

4. *See* Appendix Documents 1–9 and Exhibit 3, Documents 1 and 3.

However, we do not believe that plaintiffs have made a showing of "good cause" with respect to all of the documents here sought over the defendants' claim of attorney-client privilege. *Garner* stated that one indicia of "good cause" was whether or not the communication sought consisted of "advice concerning the litigation itself." *Garner v. Wolfinbarger, supra*, 430 F.2d at 1104. The initial action in these consolidated cases, *Panter v. Marshall Field & Co.*, No. 78 C 537, was filed February 14, 1978. At least eight of the 36 documents with respect to which the attorney-client privilege is asserted were prepared after the commencement of the *Panter* suit, or after the filing of *Weiss v. Marshall Field*, 78 CH 492, in the Circuit Court of Cook County on January 25, 1978 and fall in the third category.[5] To the extent that any of the documents here sought raised bona fide claims of attorney-client privilege with respect to legal advice concerning this or other possible shareholder litigation involving the Carter Hawley Hale proposal, we would not find "good cause" to overcome the attorney-client privilege.

■ Notwithstanding our holding that plaintiffs have not shown "good cause" as to the third category of documents, none of the eight documents falling into this category is protected by a valid claim of the attorney-client privilege. The mere existence of an attorney-client relationship does not necessarily entitle communications between attorney and client to a claim of privilege. *See Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1161 (D.S.C. 1974). Documents such as a letter informing counsel that certain individuals have been served with process, *see* Appendix, Document 20, or a letter of transmittal containing communications from third parties, *see* Appendix, Documents 21 and 23, do not contain disclosures which the attorney-client privilege was designed to protect.

Therefore, we do not find Documents 20, 21 and 23–28 protected by a valid claim of the attorney-client privilege.

Accordingly, as per our order, *infra*, we grant plaintiff's motion with respect to the 36 documents for which defendants have asserted the attorney-client privilege.

## WORK PRODUCT PRIVILEGE

Claims of work-product privilege have been asserted with respect to 14 of the 38 documents sought in this motion to compel. Plaintiffs resist the claims of work-product privilege on numerous grounds, including (1) that some of the documents were not prepared in anticipation of this or some closely connected litigation, and hence are not protected as work-product, (2) that for those documents for which work-product privilege is found, plaintiffs have demonstrated a sufficiently compelling need, and (3) that there has been a waiver of the work-product privilege. For the reasons hereinafter stated, plaintiffs' motion is granted.

■ Plaintiffs' initial contention that work-product privilege does not extend to materials prepared in anticipation of litigation or for trial in lawsuits other than the case at bar is without merit. While it appears that the extension of the work-product privilege to materials prepared in prior, terminated litigation was recently considered an unsettled question, *see* 4 Moore's Federal Practice ¶ 26.64[2], at 26–415 (1976 ed.), and there is authority for limiting the availability of work-product protection to cases involving facts and issues related to the instant litigation, *see, e. g., Midland Investment Co. v. Van Alstyne, Noel & Co.*, 59 F.R.D. 134, 138 (S.D.N.Y.1973), the weight of modern authority supports the conclusion that the work-product privilege extends to documents prepared in anticipation of prior, terminated litigation, regardless of the interconnectedness of the issues or facts. *E. g., In re Murphy*, 560 F.2d 326, 333–35 (8th Cir. 1977) (cases cited therein). We concur in the reasoning of these recent cases, and, accordingly, reject plaintiffs'

---

5. *See* Appendix Documents 20, 21, and 23–28.

narrow definition of the scope of the work-product privilege.[6]

 Notwithstanding our conclusion that the work-product privilege extends to documents prepared in anticipation of previous, terminated litigation or threatened litigation, we cannot sustain the broad assertions of work-product privilege so as to prevent discovery of the documents here sought. Whether styled as a showing of a sufficiently compelling need or as a waiver of the work-product privilege,[7] we find that the defendants' reliance in this litigation upon the advice of counsel as a major justification for their actions in opposing the Carter Hawley Hale combination and as a defense to these shareholders' suits renders the advice and actions of counsel a central issue, and as such overcomes the attorneys' work-product privilege for documents in categories one and two. *See* 4 Moore's Federal Practice ¶ 26.64[4], at 26–447 (1976 ed.).

Two recent cases have considered analogous issues and have ordered discovery notwithstanding assertions of the work-product privilege. In *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926 (N.D.Cal. 1976), plaintiff brought an antitrust action alleging that the defendant had filed in bad faith a series of patent infringement suits in an effort to monopolize. The defendant designated certain of its lawyers as witnesses to be called at trial, and plaintiff moved for production of the attorneys' relevant work-product. Finding that the principal issue in the case was the defendant's good faith in instituting and maintaining the prior patent litigation, the court held that the plaintiff had shown a compelling need for production of relevant work-product. 413 F.Supp. at 931.[8]

**6.** While we reject plaintiffs' argument that the work-product privilege only extends to material generated in anticipation of this or closely related litigation, we note that the "in anticipation of" portion of the test for work-product protection does limit the doctrine's scope. Defendants argue that the work-product privilege extends so far as to protect four documents which concern a tender offer that Marshall Field considered making in 1975, *see* Appendix Exhibit 3, Documents Nos. 1, 2, 3, 5, because they were prepared "in a context with obvious litigation potential." We believe defendants' argument overstates the scope of the work-product privilege.

Though it is not necessary for a document to have been prepared after the commencement of litigation in order to qualify for work product protection, *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*, 47 F.R.D. 334, 337 (S.D.N.Y.1969), "work-product immunity requires a more immediate showing than the remote possibility of litigation." *Garfinkle v. Arcata National Corp., supra*, 64 F.R.D. at 690. In *Garfinkle*, the court held that certain documents underlying the issuance of a law firm's opinion letter on the registration of shares were not protected as work-product. "While the issuance of opinion letters on the registration of shares might result in liability for the parties involved, this is a routine procedure necessary in the securities field and is not done with litigation in mind." *Id. See In re Penn Central Commercial Paper Litigation*, 61 F.R.D. 453, 467–68 (S.D.N.Y.1973).

While the routine issuance of opinion letters with respect to stock registrations is perhaps less likely generally to involve litigation than documents produced in a proposed tender offer, we do not recognize a *per se* rule, as defendants apparently wish, that an attorney's work product in preparing a tender offer or other form of business combination is automatically entitled to work product protection. For documents prepared prior to the filing of a suit, "the prospect of litigation" must be "identifiable because of *specific claims* that have already arisen." *Stix Products, Inc. v. United Merchants & Manufacturers, Inc., supra*, 47 F.R.D. at 337 (emphasis added).

Absent a specific showing by defendants that in this particular tender offer in early 1975 there was a clear threat of litigation "involving claims which had already arisen," we do not find defendants' contention that these documents are privileged "work product" persuasive.

**7.** The work product privilege, unlike the attorney-client privilege which belongs to the client, may be invoked only by the attorney. *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 156 (D.Del.1977). Being based on policies and purposes different from those which underly the attorney-client privilege, it is clear that a defendant's waiver of the attorney-client privilege does not necessarily mean that the work-product protection is lost. *Handgards, Inc. v. Johnson & Johnson, supra*, 413 F.Supp. at 929.

**8.** We do not construe the *Handgards, Inc.* decision as resting upon the narrow ground that the defendant had designated its lawyers as trial witnesses. In analogizing the case before it to *Bird v. Penn Central Co.*, 61 F.R.D. 43 (E.D.Pa.1973), the court grounded its decision upon the broad need for discovery:

Similarly, the plaintiff in the case at bar can demonstrate the bad faith of the defendants

Similarly, in *Bird v. Penn Central Co.*, 61 F.R.D. 43 (E.D.Pa.1973), plaintiffs brought a diversity action to rescind two insurance policies which provided insurance coverage for the defendants. The defendants raised the defense of laches on the ground the plaintiffs knew or should have known of the grounds upon which rescission was sought: plaintiffs' counsel had served as investigators of the prior claims which defendants had made under the insurance policies. Finding the crucial issue with respect to this portion of the lawsuit to be what the plaintiffs knew or should have known, the court held the relevant work-product discoverable:

> Because the nature of this defense concerns knowledge, legal theories and conclusions of plaintiffs' attorneys charged with claim investigation, such "advice of counsel" evidenced in these documents is discoverable when it is directly relevant to a possible rescission action or suggests reasons to indicate the propriety of such an action.

61 F.R.D. at 47.

■ We find these cases persuasive authority. Where the critical issue in a shareholders' suit is the nature and bona fides of the corporate defendants' reliance upon the "advice of counsel" in undertaking certain actions alleged to have been in breach of the defendants' fiduciary duties, we find the advice of counsel to be directly at issue and find the need for production of counsel's work-product compelling. Accordingly, we hold that, with respect to the docu-

> only through the discovery of information in the hands of the defendants and their attorneys.
> 413 F.Supp. at 931.

ments prepared "in anticipation of" the Marshall Field-Carter Hawley Hale litigation or "in anticipation of" other possible, earlier litigation,[9] the defendants' claims of work-product protection are overcome.

■ As to documents in the third category which relate to this and/or other possible shareholder litigation arising out of the proposed Carter Hawley Hale combination with Marshall Field, we find that defendants may assert a valid claim of work-product privilege. *See Broad v. Rockwell International Corp., supra*, CCH Fed.Sec.L.Rep. ¶ 95,894, at 91,304. However, we do not find valid the assertions of work-product privilege with respect to the specific documents here at issue. As previously discussed, Document 20 is a letter primarily alerting counsel to the service of process upon certain Marshall Field directors. Document 21 is a cover letter to counsel asking for assistance with a shareholder inquiry. Documents 27 and 28 are letters from counsel approving a proposed footnote to the Marshall Field's financial statements which bears on the instant litigation. None of these documents contains the type of information intended to be protected by the work-product privilege.

ORDER

The defendants shall produce, subject to a protective order to be drafted by the parties and approved by the Court, each of the 38 documents set forth on Appendix A.

Appendix A to follow.

**9.** *See* Appendix, Documents 15, 16, 19, 22, 30, and Exhibit 3, Documents 1, 2, 3, 5 and 8.

APPENDIX A

AC = Attorney-client privilege
WP = Work-product privilege

| DOCUMENT FOR WHICH PRIVILEGE IS CLAIMED | PRIVILEGE CLAIMED | DISPOSITION |
|---|---|---|
| 1. A January 22, 1975, letter from Ralph E. Bowers, vice president and secretary of Field's, to Hammond E. Chaffetz, an attorney with Kirkland & Ellis, providing information concerning a legal opinion with respect to a proposed acquisition. | AC | Produce |
| 2. A portion of the minutes of the meeting of the Board of Directors of Field's on January 22, 1975, concerning an opinion given by Mr. Chaffetz on the application of the antitrust laws to a potential acquisition by Field's. | AC | " |
| 3. A January 23, 1975, letter from Mr. Bowers to Mr. Chaffetz concerning the application of the antitrust laws to a proposed acquisition. | AC | " |
| 4. A portion of the minutes of the meeting of the Board of Directors of Field's on January 24, 1975, concerning an opinion given by Mr. Chaffetz on the application of the antitrust laws to a potential acquisition by Field's. | AC | " |
| 5. A January 30, 1975, letter from Mr. Bowers to Mr. Chaffetz requesting comments with respect to certain portions of a dealer-manager agreement and a draft of a tender offer. | AC | " |
| 6. A January 31, 1975, letter from Mr. Bowers to Mr. Chaffetz requesting review of an opinion concerning the application of the antitrust laws to a proposed acquisition. | AC | " |
| 7. One paragraph of a February 3, 1975, memorandum prepared by Mr. Bowers concerning advice given by Mr. Chaffetz with respect to the application of the antitrust laws to a possible tender offer by Field's. | AC | " |
| 8. A February 3, 1975, letter from Mr. Chaffetz to Mr. Bowers suggesting revisions in the description of an opinion concerning the application of the antitrust laws to a proposed acquisition. | AC | " |
| 9. An undated copy of one page from the dealer-manager agreement containing handwritten notes by Donald G. Kempf, Jr., an attorney with Kirkland & Ellis. | AC | " |
| 10. A September 15, 1975, memorandum of a conversation between Mr. Bowers and Joseph H. Flom, an attorney with Skadden, Arps, Slate, Meagher & Flom, concerning the antitrust aspects of a potential acquisition and a response to a merger inquiry. | AC | " |
| 11. A September 17, 1975, memorandum prepared by Mr. Bowers from his handwritten notes of a telephone conversation with Mr. Flom and Alfred J. Law, an attorney with Skadden, Arps, Slate, Meagher & Flom, concerning Field's response in discussions with a representative of a potential merger partner. | AC | " |

Produce

12. An October 8, 1975, handwritten memorandum prepared by Mr. Bowers from a conversation with William R. Jentes, an attorney with Kirkland & Ellis, concerning FTC action on a possible business combination. AC "

13. Two undated handwritten memoranda concerning material sent to Mr. Law with respect to the application of the antitrust laws to a possible business combination. AC "

14. A January 27, 1977, letter from Paul R. Obert, vice president-law and secretary of Field's, to Mr. Flom concerning a reply to another retailer with respect to a possible business combination. AC "

15. A March 13, 1977, draft of a complaint prepared by Skadden, Arps, Slate, Meagher & Flom concerning the application of the antitrust laws to a possible business combination. AC–WP "

16. An October 19, 1977, memorandum prepared by Angelo R. Arena, president and chief executive officer of Marshall Field & Company, summarizing a telephone conversation with Mr. Flom and Roger S. Aaron, an attorney with Skadden, Arps, Slate, Meagher & Flom, on the morning of October 18, 1977. The discussion concerned advice given by Messrs. Flom and Aaron with respect to certain legal issues involved in mergers and acquisitions. AC–WP "

17. An October 19, 1977, memorandum prepared by Mr. Arena summarizing a conversation with Messrs. Flom and Aaron on the afternoon of October 18, 1977. The memorandum outlines advice given by Messrs. Flom and Aaron with respect to the legal status of an inquiry from Carter Hawley Hale Stores, Inc. and a response to that inquiry by Field's. AC "

18. An undated handwritten memorandum prepared by Mr. Arena of a conversation with Mr. Chaffetz. The memorandum outlines advice given by Mr. Chaffetz with respect to trading activity in Field's stock. AC "

19. A January 17, 1978, letter from Mr. Obert to the directors of Field's concerning their depositions in Marshall Field & Company v. Carter Hawley Hale Stores, Inc., 77 C 4594 (N.D. Ill.), a then pending Section 7 Clayton Act action. AC–WP "

20. A January 31, 1978, letter from Mr. Obert to Mr. Chaffetz concerning plans for the defense of Field's and others in Weiss v. Marshall Field & Co., 78 C 620 (N.D. Ill.). AC–WP "

21. A February 8, 1978, letter from Mr. Obert to Mr. Chaffetz requesting advice with respect to a reply to a stockholder inquiry. AC–WP "

22. A February 14, 1978, memorandum from David B. Boxer, manager of marketing research of Field's, to John WP "

Produce

A. Kroyer, vice president and comptroller of Field's, concerning information requested by Kirkland & Ellis for use in Marshall Field & Company v. Carter Hawley Hale Stores, Inc.

23. A February 17, 1978, letter from Mr. Obert to Mr. Chaffetz requesting advice with respect to a reply to a shareholder inquiry. — AC — "

24. A February 17, 1978, note from Mr. Chaffetz to Mr. Obert enclosing a draft of a reply to a stockholder inquiry. — AC — "

25. A February 20, 1978, note to Mr. Chaffetz from Mr. Obert, including Mr. Chaffetz's typewritten reply on the note, concerning advice with respect to a letter to be sent by Mr. Arena. — AC — "

26. A March 2, 1978, letter from Mr. Obert to Mr. Chaffetz requesting advice with respect to a reply to a stockholder inquiry. — AC — "

27. A March 27, 1978, letter from Skadden, Arps, Slate, Meagher & Flom to Mr. Obert concerning a proposed footnote to Field's financial statements. — AC–WP — "

28. A March 27, 1978, letter from Kirkland & Ellis to Mr. Obert concerning a proposed footnote to Field's financial statements. — AC–WP — "

29. An April 22, 1977, memorandum from J. M. Nannes and R. L. Selle to S. L. Shapiro, attorneys with Skadden, Arps, Slate, Meagher & Flom, concerning the antitrust implications of a potential acquisition by Field's. At the time of the memorandum, Skadden Arps was performing legal services for. Field's. (This memorandum was produced inadvertently as document nos. 1862–64.) — AC — "

30. A November 28, 1977, memorandum from George G. Rinder, executive vice president of Field's to Mr. Obert concerning information requested by Kirkland & Ellis. At the time of this memorandum, Kirkland & Ellis was performing legal services for Field's. — AC–WP — "

EXHIBIT 3 DOCUMENTS

1. A January 23, 1975 letter from John E. McGovern, Jr., an attorney with Wilson & McIlvaine, to Paul J. Miller, an attorney for Sonnenschein, Carlin, Nath & Rosenthal, transmitting Mr. McGovern's comments on a draft of a proposed dealer-manager agreement. — WP — Produce

2. An undated memo, apparently authored by Mr. Bowers, concerning materials sent to Mr. Chaffetz in connection with advice on a proposed acquisition by Field's. — AC–WP — "

| | | |
|---|---|---|
| 3. A January 28, 1975 letter from Mr. McGovern to Mr. Bowers concerning certain documents prepared by Mr. McGovern in connection with a proposed acquisition by Field's. | AC–WP | Produce |
| 4. An August 5, 1975 letter from Mr. Bowers to Charles W. Board, an attorney with Wilson & McIlvaine, concerning the rule against perpetuities. | AC | " |
| 5. An August 7, 1975 letter from Mr. Bowers to Mr. Chaffetz concerning information in connection with an opinion to be given by Mr. Chaffetz. | AC–WP | " |
| 6. A September 12, 1976 memorandum prepared by Mr. Bowers summarizing a conversation with Mr. Jentes concerning the antitrust aspects of a proposed acquisition by Field's. | AC | " |
| 7. An undated memorandum of a telephone conversation with Mr. Flom concerning additional information required by Field's in order to evaluate a proposed acquisition. | AC | Produce |
| 8. An undated draft of a complaint prepared by Skadden, Arps, Slate, Meagher & Flom concerning the application of the antitrust laws to a possible business combination between Field's and Carter Hawley Hale Stores, Inc. | AC–WP | " |