James Lenard SMALL, et al., Plaintiffs,

v.

James B. HUNT, Jr., Governor; Franklin Freeman, Secretary of the Department of Correction; and Lynn C. Phillips, Director of Prisons, Defendants.

Robert G. THORNE, et al., Plaintiffs,

v.

James B. HUNT, Jr., Governor; Franklin Freeman, Secretary of the Department of Correction; and Lynn C. Phillips, Director of Prisons, Defendants.

Nos. 85–987–CRT, 87–446–CRT.

United States District Court,
E.D. North Carolina,
Raleigh Division.

Jan. 7, 1994.

---

Melinda Lawrence, Patterson, Harkavy & Lawrence, Raleigh, NC, Louis L. Lesesne, Jr., Lesesne & Connette, Charlotte, NC, Marvin R. Sparrow, N.C. Prisoner Legal Services, Inc., Raleigh, NC, for plaintiffs.

James Peeler Smith, Sp. Deputy Atty. Gen., N.C. Dept. of Justice, Raleigh, NC, for defendants.

## ORDER

DENSON, United States Magistrate Judge.

THIS CAUSE comes before the court on Plaintiff's Motion for Order Compelling Production of Requests 9 and 10 of Plaintiffs' Initial Request for Production. Defendants have responded and the motions are ripe for ruling.

### A

On October 13, 1993, Defendants filed a petition for modification of the settlement agreement entered in this case. In their petition, Defendants asserted that the modification is necessary "because of a drastic, unanticipated increase in prison admission rates." They contend that this increase was unforeseen and unforeseeable at the time of the entry of the settlement agreement. Under the standards for modification of consent decrees set out in *Rufo v. Inmates of Suffolk County Jail*, — U.S. —, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), Defendants must demonstrate a significant change in circumstances which was not foreseen at the time of the initial settlement agreement.

In making this showing of a change in circumstances, Defendants offer the affidavit of Mr. Joseph Hamilton, the former Director

of the Division of Prisons. In his affidavit, Mr. Hamilton states that "[a]t the time of the negotiations, the Division of Prisons had made a number of assumptions regarding the custody level and population requirements of the system." He concludes that "[a]t the time of the settlement negotiations, the Committee did not foresee the crisis we face today." Mr. Hamilton asserts that the assumptions made by the Committee were based on information known to the Committee at the time of the negotiations.

Plaintiffs claim that, in light of the statements in the Hamilton affidavit and the assertions in Defendants' petition, "the information available to and considered by the settlement committee regarding prison admission rates and prison population projections is critical to resolution of a key issue presented by this petition." Accordingly, in their initial request for production, dated November 2, 1993, Plaintiffs requested "any documents provided to the settlement committee which represented the defendants in the negotiation of the settlement agreement in this action" and "agendas, schedules or other documents relating to meetings of the settlement committee." (Requests 9 and 10) Defendants have objected to the production of these documents based on the confidentiality of compromise negotiations under Federal Rule of Evidence 408, the attorney-client privilege, and legislative immunity.

**B**

■ Defendants first argue that, pursuant to F.R.E. 408, the Committee's deliberations and internal discussions about settlement are confidential and privileged and therefore not discoverable. The question before the Court at this time is not the admissibility of these materials at trial, but rather the discoverability of the documents. Rule 408, since it is a rule of evidence, deals only with the admissibility of information derived from compromise negotiations. However, Rule 26(b)(1) of the Federal Rules of Civil Procedure, limiting discovery to matter that is "not privileged," has been interpreted to mean that the same rules of privilege apply to discovery as apply at trial. Wright & Miller, *Federal Practice and Procedure*, § 2016 (1970).

Nevertheless, assuming that Rule 408 applies to discoverability as well as admissibility, the rule does not protect the materials sought by Plaintiffs in their motion. Rule 408 reads as follows:

> "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim ... is not admissible *to prove liability for or invalidity of the claim or its amount.* Evidence of conduct or statement made in compromise negotiations is likewise not admissible ... This rule also does not require exclusion when the evidence is offered for another purpose ..." (emphasis added).

Plaintiffs do not seek to discover the settlement documents in order to "prove liability for or invalidity of the claim or its amount." They request this information in order to rebut Defendants' claim of changed circumstances and thereby oppose the petition to modify the settlement agreement. Accordingly, the materials sought by Plaintiffs are not protected by the privilege delineated in Rule 408.

**C**

Defendants also claim that the records of the settlement negotiations are protected by the attorney-client privilege. They assert that because Skip Capone and Tiare Smiley, who were lead counsel at the trial, presided at the meetings of the Settlement Committee, kept records of the Committee's proceedings, and provided legal advice to the Committee, any materials regarding the substance of these negotiations are privileged. Plaintiffs, in response, argue that Defendants have waived the attorney-client privilege by claiming, as a basis for their petition to modify, that the present circumstances were unforeseen at the time of the negotiations because of assumptions made and information relied on by the Committee. Plaintiffs assert that Defendants have now put these assumptions at issue and Plaintiffs are therefore entitled to contemporaneous documentation of these assumptions and the information underlying the assumptions.

Plaintiffs' argument is not only persuasive; it is also supported by authority. A number of courts have addressed the implied waiver of the attorney-client privilege under the "at issue" doctrine and one district court has developed a test for determining if the privilege has been waived. A party is treated as having waived its privileges if: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975). *See also Remington Arms Company v. Liberty Mutual Insurance Company*, 142 F.R.D. 408 (D.Del.1992) (and cases cited therein).

The "at issue" doctrine is based on notions of fairness and truth-seeking. Selective use of privileged information by one side may "garble" the truth. *United States v. St. Pierre*, 132 F.2d 837, 840 (2nd Cir.1942), *cert. dismissed as moot*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943) (Learned Hand, referring to the Fifth Amendment privilege). In addition, "[w]here a party injects part of a communication as evidence, fairness demands that the opposing party be allowed to examine the whole picture." *Remington Arms*, 142 F.R.D. at 413. Dean Wigmore has stated that "waiver is to be predicated ... when the conduct ... places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege." 8 J. Wigmore, *Evidence* § 2388, at 855 (McNaughton rev. 1961).

These concerns are very relevant to the case at hand. Plaintiffs would be unable to effectively oppose Defendants' petition to modify if they are prevented from challenging the assumptions on which Defendants claim they relied. In order to challenge these assumptions, they must have access to the deliberations and decisional processes of the Committee. Without such access, Plaintiffs, as well as the Court, will be unable to determine if, in fact, the present circumstances were foreseen, or at least foreseeable, at the time of the settlement negotiations. Therefore, by filing their petition to modify, Defendants have waived any attorney-client privilege that might have protected the deliberations of the settlement committee.

### D

Defendants' final claim is that the documents requested by Plaintiffs are protected by legislative immunity. In their supplemental brief on legislative immunity, Defendants assert that "[a]lthough the Committee's membership included State officials or their representatives who were not legislators, the purpose of the committee was quasi-legislative in that the Settlement Committee had to deliberate on the proposals as if it were a committee of the legislature." In light of this, Defendants argue that any documents relating to the discussions of the Settlement Committee are nondiscoverable.

The doctrine of legislative immunity for United States legislators is one that derives from the Speech or Debate Clause of the United States Constitution. U.S. Const. Art. I § 6 ("[F]or any Speech or Debate in either House, they [Representatives and Senators] shall not be questioned in any other Place."). Common law immunity for state legislators was first recognized in *Tenney v. Brandhove*, 341 U.S. 367, 373, 71 S.Ct. 783, 786, 95 L.Ed. 1019, *reh'g denied*, 342 U.S. 843, 72 S.Ct. 20, 96 L.Ed. 637 (1951). The Court in *Tenney* granted absolute immunity from civil suit to state legislators acting within "the sphere of legitimate legislative activity." *Id.* at 376, 71 S.Ct. at 788. The Court later extended this privilege to protect legislators from testifying regarding matters of legislative conduct. *Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967). Thus, legislative immunity is both an evidentiary and testimonial privilege, as well as a protection against civil suit. *See Schlitz v. Virginia*, 854 F.2d 43, 46 (4th Cir.1988) ("[t]he purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves.").

■ The Plaintiffs here are not seeking the testimony of the legislators on the Committee regarding their "legislative acts," nor are they pursuing any civil claims against these legislators. They are merely requesting documents relating to the deliberations of the Committee, such as minutes of the meetings and data considered by the Committee during their deliberations. Defendants, however, argue that

> [t]he production of documents is as disruptive as an the act [sic] of giving testimony, if not often more so, since a document search may require many hours of work as anyone familiar with the process of discovery is well aware. Requiring a legislator to search for documents is contrary to the very principles which support legislative immunity from liability or being required to testify.

State's Brief on Legislative Immunity at 8 n. 3.

Defendant's argument is not supported by the case law. The primary purpose of legislative immunity is not to protect the confidentiality of legislative communications, nor is it to relieve legislators of the burdens associated with document production. The privilege is intended only to shield legislators from "the harassment of hostile questioning." *In re Grand Jury Investigation into Possible Violations of Title 18, etc.*, 587 F.2d 589, 597 (3rd Cir.1978). "[T]he privilege when applied to records or third-party testimony is one of nonevidentiary use, not of non-disclosure." *Id.* This means that "documents created by legislative activity can, if not protected by any other privilege, be disclosed and used in a legal dispute that does not directly involve those who wrote the document, i.e., the legislator or his aides." *Corporation Insular de Seguros v. Garcia,* 709 F.Supp. 288, 297· (D.P.R.1989). *See also Marylanders for Fair Representation, Inc. v. Schaefer,* 144 F.R.D. 292, 302 n. 20 (D.Md.1992).

In their document requests, Plaintiffs seek "agendas, schedules or other documents relating to meetings of the settlement committee," and "any documents provided to the settlement committee." The agendas or minutes of the committee meetings are, contrary to Defendants' assertion, "documents prepared by the Committee during the course of its deliberations," *id.,* and therefore are discoverable, as such documents were in the *Marylanders* case. The documents provided to the settlement committee, on which they relied during their deliberations, also do not fall within the scope of legislative immunity.

Accordingly, because the documents requested by Plaintiffs are not protected by legislative immunity, F.R.E. 408, or the attorney-client privilege, Plaintiff's motion to compel production of the settlement materials specified in Requests 9 and 10 is ALLOWED. Defendants are ORDERED to produce these materials.

SO ORDERED.