**Estelle MANZI, Plaintiff,**

v.

**Robert DiCARLO, et al., Defendants.**

**No. CV 95–3583(ERK).**

United States District Court,
E.D. New York.

Sept. 5, 1997.

126

Ramyar Moghadassi, New York City, Bonnie M. Mussman, Mussman & Northey, New York City, for Estelle Manzi.

Christine E. Morrison, Attorney General of State of New York, New York City, Alpa Sanghvi, Office of Attorney General of State of New York, New York City, for Robert DiCarlo.

Andrea S. Christensen, Kaye, Scholer, Fierman, Hays & Handler, New york City, Christine E. Morrison, Attorney General of State of New York, New York City, Alpa Sanghvi, Office of Attorney General of State of New York, New York City, for Clorinda Annarummo, New York State.

Alpa Sanghvi, Office of Attorney General of State of New York, New York City, for New York State Senate.

### ORDER

GO, United States Magistrate Judge.

Plaintiff, who worked in the offices of defendant and then New York State Senator Robert DiCarlo, claims that defendants unlawfully terminated her employment in violation of various federal, state and local statutes. She has moved to remove the confidential designation placed on several documents produced by defendants DiCarlo, the New York State and the New York State Assembly (collectively called the "State Defendants") pursuant to an order dated April 3, 1997. Plaintiff subsequently narrowed her challenge to only two documents (numbered 18 and 26) which the State Defendants designated as confidential. After considering the submissions and conducting an *in camera* inspection of the two documents, plaintiff's application is granted.

## BACKGROUND

The State Defendants allege that plaintiff's employment was terminated as a result of cutbacks in New York State Senate allocations to Senator DiCarlo for his office. When plaintiff sought to examine documents pertinent to the allocations made to Senator DiCarlo, the State Defendants moved for a protective order, claiming that the documents are privileged and normally not subject to either discovery or disclosure under New York's Freedom of Information Law. Public Officers Law, § 88 (McKinney's 1989). In support of their claim, they provided the affidavit dated March 20, 1997 of Stephen F. Sloan, Secretary of the New York State Senate, ("Sloan Aff.") who is in charge of all personnel and spending records.

Because the State Defendants conceded the relevance of the documents at issue and indicated their willingness to produce the documents as long as plaintiff kept them confidential, I ordered production subject to an order of confidentiality. To insure that plaintiff would not be unduly restricted in the use of any documents, I also gave plaintiff the right to challenge the confidential designation of any documents which led to the instant motion.

In response, the State Defendants continue to argue that the documents are protected by both the "deliberative process" and "legislative" privilege. They have provided a second affidavit from Secretary Sloan dated June 23, 1997 ("2d Sloan Aff.") reiterating their position that the allocation of State Senate resources among its members is within the sole discretion of the Senate Majority Leader and that documents concerning the allocations have always been kept confidential. *Id.* at ¶ 4; Sloan Aff. at ¶ 4. Secretary Sloan further states that the allocation of funds is a continuing process and there "is never a final decision" since unspent monies are reallocated by the Majority Leader. *Id.* at ¶ 5; Sloan Aff. at ¶ 4.

## DISCUSSION

Since the main claims in this case arise under federal law, federal law governs the determination whether the disputed documents are privileged. Fed.R.Evid. 501;

*von Bulow by Auersperg v. von Bulow,* 811 F.2d 136, 141 (2d Cir.), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *King v. Conde,* 121 F.R.D. 180, 187 (E.D.N.Y.1988). The burden of justifying application of any privilege falls upon the party seeking to invoke it. *von Bulow,* 811 F.2d at 144. I will first address defendants' assertion of a "legislative privilege" since the reasons for its inapplicability in this case are pertinent to determining the appropriate scope of the "deliberative process" privilege in this case.

*Legislative Immunity*

The State Defendants argue that the documents are protected by a "legislative privilege" derived from the Speech and Debate Clause of the United States Constitution, Art. I, § 6, cl. 1, and the comparable provision in the New York Constitution.[1] Art. 3, § 11 (McKinney's 1987). The Supreme Court has recognized that state legislators enjoy a common-law immunity from civil damages actions for conduct within "the sphere of legitimate legislative activity" that is similar in origin and rationale as the immunity conferred by the Speech and Debate Clause. *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 731–32, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980) (quoting *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951)). This immunity insures that the "legislative function may be performed independently without fear of outside interference." *Id.,* 446 U.S. at 732, 100 S.Ct. at 1974. Thus the Supreme Court has found persons acting in a legislative capacity to be protected from claims for both damages and injunctive relief under 42 U.S.C. § 1983. *Id.*

■ However, whether state legislative immunity negates liability under a federal statute depends on the intent of Congress. *See Supreme Court of Virginia,* 446 U.S. at 739, 100 S.Ct. at 1978 (court looked at legislative history of 42 U.S.C. § 1988 to find that Congress did not intend to permit award of fees against state defendants otherwise pro-

tected by legislative immunity for their actions). Since Congress provided in Title VII, 42 U.S.C. § 2000e *et seq.,* and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* that public officials may be liable, courts have found that the common-law immunity of state legislators does not override claims brought under those statutes. *Bostick v. Rappleyea,* 629 F.Supp. 1328, 1332–33 (N.D.N.Y.1985), *aff'd sub nom., Bostick v. Cochrane,* 907 F.2d 144 (2d Cir.1990) and cases cited therein; *see also Davis v. Passman,* 442 U.S. 228, 246, 99 S.Ct. 2264, 2277, 60 L.Ed.2d 846 (1979) (legislative immunity does not necessarily protect Congressman from an employment discrimination suit brought by an aide he fired, unless the conduct itself is shielded by the Speech and Debate Clause). Thus, courts in such cases have focused primarily on whether plaintiffs and state defendants fit the statutory definitions of employee and employer, finding the statutory limitations to be sufficient to accommodate any immunity concerns. *Bostick,* 629 F.Supp. at 1332. Since the allocation decisions are integral to defendants' purported reasons for termination, it is questionable whether the common-law legislative immunity would apply.

■ Moreover, the decisions involved would not otherwise qualify as legislative acts entitled to immunity. The Supreme Court has utilized a functional analysis to determine when immunity is available, in order to insure that immunity is not extended further than its purposes require. *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). Legislative immunity covers only legislative acts "generally done in the course of the process of enacting legislation," as distinguished from acts "related to the due functioning of the legislative process." *Hutchinson v. Proxmire,* 443 U.S. 111, 131, 99 S.Ct. 2675, 2686, 61 L.Ed.2d 411 (1979) (quoting *United States v. Johnson,* 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966)). It shields the acts that are "an integral part of the deliberative and communicative processes by which Members partici-

---

**1.** Both clauses provide that members of the legislature "shall not be questioned in any other place" for "any Speech or Debate in either House." U.S. Constitution, Art. I, § 6, cl. 1; New York Constitution, Art. III, § 11.

pate in committee and House proceedings with respect to consideration and passage or rejection of proposed legislation ...," but not actions in "executing a legislative order" or "carrying out [legislative] directions." *Gravel v. United States*, 408 U.S. 606, 620–21, 625, 92 S.Ct. 2614, 2624–25, 2627, 33 L.Ed.2d 583 (1972).

As made clear in the two affidavits of Secretary Sloan, the allocation of Senate funds to each Senate member is within the discretion of the Senate Majority leader and not related to the passage of legislation. Under the Senate practice in this case, the Majority Leader is simply administering appropriated funds much in the same manner that an agency official expends funds allocated to the agency by the legislature. Since such decisions are essentially administrative in nature, they are not legislative acts entitled to immunity, even though they may be essential to the functioning of the State Senate. *Forrester,* 484 U.S. at 227–28, 108 S.Ct. at 544–45 (judicial immunity did not protect a judge's administrative decision to demote and discharge an employee); *Rateree v. Rockett,* 852 F.2d 946, 950 (7th Cir.1988) (executive and administrative actions not protected); *see also Supreme Court of Virginia,* 446 U.S. at 733–34, 100 S.Ct. at 1975–76 (Virginia Court promulgating bar code had legislative immunity for exercising delegated legislative power). Had the allocations been part of the regular budgetary process and put to a legislative vote, then legislative immunity arguably might apply in the allocations at issue. *Gordon v. Katz,* 934 F.Supp. 79, 83 (S.D.N.Y. 1995); *Rini v. Zwirn,* 886 F.Supp. 270, 282–83 (E.D.N.Y.1995).

■ In any event, the existence of legislative immunity is not necessarily determinative of the issue whether the documents should be accorded confidential treatment. The Supreme Court in *Gillock* rejected the notion that the common law immunity of state legislators gives rise to a general evidentiary privilege. *United States v. Gillock,* 445 U.S. 360, 374, 100 S.Ct. 1185, 1194, 63 L.Ed.2d 454 (1980); *see also In re Grand Jury,* 821 F.2d 946, 956–58 (3d Cir.1987), *cert. denied sub nom., Colafella v. United States,* 484 U.S. 1025, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988). Instead, the court engaged in a balancing of interests and found that the interests of the federal government in enforcing its criminal statutes outweighed the "speculative benefit to the state legislative process" and potential harm of interference with the functioning of state legislators. *Gillock,* 445 U.S. at 374, 100 S.Ct. at 1194.

Because *Gillock* concerned a federal criminal investigation, some lower courts addressing claims of evidentiary privilege in civil cases have held that the immunity protecting state legislators from civil liability also gives rise to a general evidentiary or testimonial privilege. *See, e.g., Miles–Un–Ltd., Inc. v. Town of New Shoreham,* 917 F.Supp. 91, 98 (D.N.H.1996); *2BD Associates Ltd. Partnership v. County Com'rs for Queen Anne's County,* 896 F.Supp. 528, 531 (D.Md.1995); *Small v. Hunt,* 152 F.R.D. 509, 512–13 (E.D.N.C.1994) (only testimonial privilege which does not protect against discovery of legislative documents). However, since federal common law governs the determination of privileges in cases involving federal claims, Fed.R.Evid. 501, the defendants' claim of immunity should not be determinative. A balancing of interests is necessary to determine whether the State Defendants have a privilege entitling them to shield the documents from disclosure. *Gray v. Board of Higher Education, City of New York,* 692 F.2d 901, 904 (2d Cir.1982); *Hartsell v. Duplex Products, Inc.,* 895 F.Supp. 100, 102 (W.D.N.C.1995); *Searingtown Corporation v. Incorporated Village of North Hills,* 575 F.Supp. 1295, 1298 (E.D.N.Y.1981).

■ In this case, the discovery and trial needs of plaintiff in enforcing her rights under federal law clearly outweigh the State Defendants' need for confidentiality. Their claim of confidentiality appears to be based, in large part, on the State's interest in preserving the secrecy of an allocation process that has historically been separate from general Senate proceedings and protected from disclosure. However, only two documents are at issue and they involve only the past allocation to a former Senator. It is not apparent how removal of the confidential designation would disrupt the legislative process, given how removed the allocation pro-

cess is from regular legislative proceedings and the age of the documents. On the other hand, the State Defendants have admitted the relevance of the information and agreed to release the documents to plaintiff. Under these circumstances, the State Defendants' interests in confidentiality must give way to any need of the plaintiff to protect her statutory rights in this litigation.

*Deliberative Process Privilege*

 The "deliberative process" privilege protects documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975). In order to qualify for protection under the privilege, the documents must (1) be "predecisional" and (2) actually relate to process by which policies are formulated. *Hopkins v. United States Dept. of Housing & Urban Dev.,* 929 F.2d 81, 84 (2d Cir.1991). Only documents which are prepared to assist a decision maker arrive at a decision are privileged. *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975); *Resolution Trust Corp. v. Diamond,* 137 F.R.D. 634, 640 (S.D.N.Y.1991).

 The purpose of deliberative process privilege is to protect the decision making processes of the *executive* branch by shielding the intra-agency memoranda reflecting recommendations and deliberations about government policies. *EPA v. Mink,* 410 U.S. 73, 87, 93 S.Ct. 827, 835, 35 L.Ed.2d 119 (1973); *Hopkins v. United States Dept. of Housing & Urban Dev.,* 929 F.2d 81, 84 (2d Cir.1991) (emphasis added). The courts in *Mink* and *Hopkins,* as well as many other courts discussing the deliberative process privilege, have focused on its applicability to executive decisions since they were cases brought under the Freedom of Information Act, 5 U.S.C. § 552, a statute governing disclosures by executive agencies. *Government Suppliers Consolidating Services, Inc. v. Bayh,* 133 F.R.D. 531, 543 (S.D.Ind.1990).

Only a few federal courts have specifically considered whether the deliberative process privilege applies to state legislators and it remains an "open question." *Corporacion Insular de Seguros v. Garcia,* 709 F.Supp. 288, 296 (D.P.R.1989); *see also In re Grand Jury,* 821 F.2d at 958–59; *Fla. Ass'n of Rehab. Fac. v. Fla. Dept. of Health,* 164 F.R.D. 257, 263 (N.D.Fla.1995); *United States v. Irvin,* 127 F.R.D. 169, 172 (C.D.Cal. 1989). The District Court in *Corporacion* rejected extension of the deliberative process privilege to state legislators because "[t]hey are part of the governmental branch that has historically has been subjected to the greatest degree of public accountability." *Corporacion,* 709 F.Supp. at 298. While such an observation is true and the concern expressed is echoed in the New York State Constitution,[2] the need for public accountability does not always outweigh other governmental concerns.

As the Third Circuit recognized in *In re Grand Jury,* however "troublesome" their claim of confidentiality, state legislators nonetheless need to be able to engage in frank and open discussions with colleagues and staff similar to the confidential communications between judges and between executive officers. 821 F.2d at 957. The court thus looked to the deliberative process privilege for guidance in analyzing the legislators' concerns, although it declined to reach the holding whether a deliberative process privilege should apply to state legislators. However, it cautioned that any confidential privilege for legislators must be "narrowly tailored," and should not be applied to "all state legislative documents which might somehow reveal the 'thought processes' of state legislators." *Id.* at 959. Rather, any legislative deliberative privilege should be "limited to communications involving opinions, recommendations or advice about legislative decisions." *Id.*

---

2. Art. 3, § 10 of the New York Constitution insures the openness of legislative proceedings by providing that:

Each house of the legislature shall keep a journal of its proceedings, and publish the same, except such parts as may require secrecy. The doors of each house shall be kept open, except when the public welfare shall require secrecy.

■ The two documents in question fail to meet both the general requirements of the deliberative process privilege, as well as the more circumscribed confidential privilege for state legislators. Document 18, which the State Defendants describe as the "1995 — Allocation Discussion Worksheet," contains the budget request submitted by Senator DiCarlo and a notation containing the approved amount. Document 26 is a memorandum from "Bruce" (described by defendants as a Special Assistant) to Secretary Sloan regarding Senator DiCarlo's expenditures and allocation request, and a notation from the Secretary approving a new allocation. These documents contain primarily factual information regarding Senator DiCarlo's proposed budget or contemplated expenditures and thus are outside the deliberative process privilege. *EPA v. Mink,* 410 U.S. 73, 89, 93 S.Ct. 827, 837, 35 L.Ed.2d 119 (1973). The balance of the information contains the amount of the allocation approved and is simply the final decision, which is not deliberative in nature.

The State Defendants argue that because allocations are "not deemed final until funds are actually spent," both documents are predecisional and reflect an on-going allocation process. This argument is based on the simplistic proposition that no decision can be final if there is a possibility that it can be changed. No decision applying the deliberative process privilege supports such a broad rule which would effectively enable governmental officials to shield documents relating to any decisions that are subsequently modified or overruled.

Even if the two documents met the general requirements for a deliberative process privilege, they do not qualify for the narrower confidential privilege applicable to state legislators. As discussed previously, the allocations in question are essentially administrative decisions delegated to the Majority Leader and do not involve legislative decisions.

Because neither document fall within the contours of either the deliberative process or state legislative privilege, there is no need to engage in balancing the various competing interests to determine the application of such a qualified privilege. *See In re Franklin National Bank Securities Litigation,* 478 F.Supp. 577, 582 (E.D.N.Y.1979). Of course, this balancing would encompass the same considerations discussed above in connection with the claim of a legislative privilege and the same result in favor of disclosure reached.

■ However, in the interest of comity, courts should attempt to "recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *King v. Conde,* 121 F.R.D. at 187. Although the defendants' arguments regarding plaintiff's improper motives in seeking to make the documents public are not persuasive, it is nonetheless appropriate to impose restrictions to accommodate the concerns of the parties. *In re Grand Jury,* 821 F.2d at 957. Thus, although documents 18 and 26 are now not covered by the prior confidentiality order, plaintiff is directed not to disclose documents 18 and 26 except in connection with this litigation. She may not disclose such documents to any other person except when needed for pretrial preparations, including depositions, in court submissions when appropriate, or for trial.

### CONCLUSION

For the foregoing reasons, plaintiff's motion to remove the confidential designation for documents 18 and 26 is granted, subject to the limitation discussed above.

SO ORDERED.