Banc of America Sec., LLC v. Evergreen Int'l, 2005 NCBC 2.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
03 CVS 9138

BANC OF AMERICA SECURITIES, LLC,          )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )
                                          )
EVERGREEN INTERNATIONAL AVIATION,         )
INC., EVERGREEN INTERNATIONAL             )
AIRLINES, INC., EVERGREEN                 )
AGRICULTURAL ENTERPRISES, INC.,           )          **ORDER**
EVERGREEN AIR CENTER, INC.,           )
EVERGREEN AIRCRAFT SALES & LEASING        )
CO., EVERGREEN AVIATION GROUND            )
LOGISTICS ENTERPRISE, INC.,               )
EVERGREEN HELICOPTERS, INC.,              )
QUALITY AVIATION SERVICES, INC.,          )
                                          )
            Defendants.                   )
_____ )

*Helms Mulliss & Wicker, PLLC by Peter J. Covington and Robert A. Muckenfuss for Plaintiff Banc of America Securities, LLC.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. by James T. Williams, Jr., Jennifer K. Van Zant, and John S. Buford; Hennigan, Bennett & Dorman, L.L.P. by C. Dana Hobart for Defendants Evergreen International Aviation, Inc., Evergreen International Airlines, Inc., Evergreen Agricultural Enterprises, Inc., Evergreen Air Center, Inc., Evergreen Aircraft Sales & Leasing Co., Evergreen Aviation Ground Logistics Enterprise, Inc., Evergreen Helicopters, Inc., and Quality Aviation Services, Inc.*

DIAZ, Judge.

{1}     The Court heard this matter on January 6, 2006, on the Plaintiff's Motion to Compel.  After considering the Court file, the written motion and supporting affidavits, the parties' briefs and authorities, and the arguments of counsel, the Court makes the following

**FINDINGS OF FACT**

Plaintiff Banc of America Securities, LLC, ("BAS") is a Delaware limited liability company with its principal place of business in Mecklenburg County.  BAS is an investment banking subsidiary of Bank of America.

{3}     The Defendants (hereinafter collectively "Evergreen") are related companies that are involved in various aspects of the commercial aviation industry.

{4}     In April 2002, Evergreen retained BAS to serve as the exclusive initial purchaser for up to $255 million of senior debt securities guaranteed by the Air Transportation Stabilization Board (the "ATSB"). Congress created the ATSB in 2001 to help stabilize the financial posture of the airline industry, following the events of September, 11, 2001.  Among other things, the enabling legislation authorized the ATSB to issue up to $10 billion in federal loan guarantees to private companies.

{5}     By way of a counterclaim in this action, Evergreen asserts that BAS breached the April 2002 agreement by (a) failing to assist Evergreen in obtaining the ATSB loan guarantee; and (b) reneging on its promise to purchase the $255 million in senior debt securities contemplated by the April 2002 agreement.

{6}     Despite this less than promising start to their business relationship, the parties executed two other agreements that (perhaps not surprisingly) have spawned additional claims.

{7}     In July 2002, the parties executed a second agreement (the "July 2002 Agreement"), whereby Evergreen retained BAS to assist it in restructuring Evergreen's debt and obtaining the elusive ATSB loan guarantee.

{8}     Evergreen asserts that it executed the July 2002 Agreement based on the following representations allegedly made by BAS:  (a) that a specific BAS employee would remain personally involved in the restructuring work; (b) that BAS would perform a global review of Evergreen's financial posture; (c) that BAS would work to stabilize Evergreen's existing debt structure; (d) that through its close contacts with the executive director of the ATSB, BAS would assist Evergreen in obtaining a loan guarantee; and (e) that BAS would assist Evergreen in obtaining debt instruments at rates that "would be 'only slightly higher' than traditional first lien secured debt."  Evergreen's Answer to Amended Complaint and Counterclaims at 15 (¶ 27).  *See also id.,* at 16, 23 (¶¶ 28, 63).

{9}     According to Evergreen, BAS not only failed to honor its commitments, but it made the representations with knowledge that they were false and with the intent to induce Evergreen to rely on them.  As a result, Evergreen has asserted (in addition to breach of contract and unjust enrichment claims) fraud and negligent misrepresentation claims against BAS with respect to the July 2002 Agreement.

{10}     Evergreen further alleges that BAS unfairly used its leverage with Evergreen's lenders to extract additional terms from Evergreen as a precondition for providing any assistance in restructuring Evergreen's debt.  These additional terms are set forth in the October 2002 agreement (hereinafter the "October 2002 Agreement").

{11}     Evergreen asserts that it executed the October 2002 Agreement under duress and in reliance on Plaintiff's representation that Evergreen was not eligible for first lien secured financing, but instead "could only obtain second lien secured 'mezzanine' debt at an interest rate in the 15-25% range from institutions known generally as 'lenders of last resort.'"  Evergreen's Answer to Amended Complaint and Counterclaims at 18 (¶ 37).

{12}     Evergreen alleges that BAS also breached the terms of the October 2002 Agreement, which ultimately forced Evergreen to seek help from other entities in restructuring its debt.  Evergreen has pled fraud and negligent misrepresentations claims arising from the October 2002 Agreement.

{13}     In its Amended Complaint, BAS asserts that it has complied with all of its contractual obligations and that it is Evergreen who breached the agreements by (a) failing to pay fees and expenses properly due

BAS under the various agreements; and (b) wrongfully retaining other financial agents to restructure its debt, in violation of the terms of the agreements.

{14} In its reply to Evergreen's counterclaims, BAS denies that it made any misrepresentations regarding the July and October 2002 Agreements. Alternatively, BAS alleges that Evergreen could not have reasonably relied on any of the alleged misrepresentations.

{15} Throughout its dealings with BAS, Evergreen was represented by Jay Goffman, a corporate restructuring partner with the firm of Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden"), and by other Skadden lawyers.

{16} Evergreen has produced over 15,000 pages of documents in discovery, along with a privilege log. The log identifies a subset of documents that Evergreen asserts contain privileged communications between it and the Skadden lawyers.

{17} According to Evergreen, it has no intention of using the privileged documents to support its claims in this litigation. Nevertheless, BAS has moved to compel the production of the documents, asserting that Evergreen has waived the attorney-client privilege by asserting counterclaims alleging fraud and negligent misrepresentation. BAS also seeks to question Evergreen's representatives at upcoming depositions about the contents of the privileged documents.

{18} Based on these findings of fact, the Court enters the following

## CONCLUSIONS OF LAW

{19} BAS asserts that it is entitled to discover the contents of otherwise privileged communications between Evergreen and its counsel based on the "broadly worded counterclaims of fraud and fraudulent inducement" asserted by Evergreen in this litigation. Memorandum of Law in Support of Plaintiff's Motion to Compel at 12.

{20} According to BAS, by pleading these counterclaims, Evergreen has "affirmatively made its knowledge and reasonable reliance on these alleged misrepresentations critical issues in this action." *Id.* As a result, BAS argues, it should be allowed to review the privileged documents "in order to prepare meaningfully its defenses to" Evergreen's counterclaims. *Id.*

{21} After carefully considering the written submissions and oral arguments of the parties, the Court will **DENY** the Plaintiff's motion to compel.

{22} The specific question before me—that is, when a party may waive the attorney-client privilege by putting certain matters "in issue"—has not been addressed by the North Carolina appellate courts.[1] The federal courts, however, have taken three approaches to this question.

{23} The first approach (which neither party champions) is the so-called "automatic waiver" rule, which provides that a party automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant. *See, e.g., Indep. Prod. Corp.* v. *Loew's Inc.,* 22 F.R.D. 266 (S.D.N.Y. 1958). Because this approach reduces the analysis to nothing more than a relevance inquiry, however, it has been largely discredited by the majority of courts that have considered the question. *See, e.g., Remington Arms* Co. v. *Liberty Mut. Ins. Co.,* 142 F.R.D. 408, 414 (D. Del. 1992); *Federal Deposit Ins. Corp.* v. *Wise,* 139 F.R.D. 168, 171 (D. Colo. 1991).

{24} The second approach (and the one adopted by a majority of federal jurisdictions), allows a trial

court to find an "implied waiver" of the privilege based on the following three part test:

> assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Hearn* v. *Rhay,* 68 F.R.D. 574, 581 (E.D. Wash. 1975).

{25}    Courts that have adopted the *Hearn* analysis have found waiver where a party asserts (as BAS does here), that (a) the opposing party's state of mind is in issue; and (b) discovery of the otherwise confidential attorney-client communications is necessary to test the opposing party's contentions. *See, e.g., Small v. Hunt,* 152 F.R.D. 509, 512 (E.D.N.C. 1994); *Synalloy Corp. v. Gray,* 142 F.R.D. 266, 270 (D. Del. 1992); *Sax v. Sax,* 136 F.R.D. 542, 544 (D. Mass. 1991).

{26}    Lastly, the third approach (which appears to be gaining favor in the federal courts), authorizes the piercing of the attorney-client privilege, if, and only if, a party puts the attorney's advice directly in issue in the litigation. *See, e.g., Rhone-Poulenc Rorer, Inc.* v. *Home Indem. Co.,* 32 F.3d 851, 863-864 (3d Cir. 1994). *See also Cincinnati Ins. Co. v. Zurich Ins. Co.,* 198 F.R.D. 81, 87-8 (W.D.N.C. 2000).

{27}    Under the approach in *Rhone-Poulenc,* "[a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." 32 F.3d at 863. Instead, "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id.*

{28}    For the reasons set forth below, the Court agrees with Evergreen that the analysis in *Rhone-Poulenc* is most consistent with North Carolina law and policy.

{29}    Rule 26(b)(1) of the North Carolina Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any matter, **not privileged**, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

(emphasis added).

{30}    Thus, Rule 26(b)(1) explicitly limits the scope of discovery to matters that are not privileged.

{31}    Privilege is the foundation upon which the attorney-client relationship rests. The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

{32}    The privilege applies to confidential communications between a client and his lawyer for the purpose of obtaining legal advice. *Id.* at 391. It does not, however, "protect *facts* which the client communicates to the attorney", nor does it "protect facts which an attorney obtains from independent sources and then conveys to the client." *Standard Chartered Bank PLC v. Ayala Int'l Holdings ( U.S.), Inc.,* 111 F.R.D. 76, 79-80 (S.D.N.Y. 1986).

{33}    The North Carolina Supreme Court has emphasized that "[t]he public's interest in protecting the attorney-client privilege is no trivial consideration, as this protection for confidential communications is one of the oldest and most revered in law." *In re Miller,* 357 N.C. 316, 328, 584 S.E.2d 772, 782 (2003).

While the attorney-client privilege impedes the full and free discovery of the truth and thus, must be narrowly construed, *see Trammel v. United States*, 445 U.S. 40, 50 (1980), the privilege also is intended to encourage clients to make the fullest disclosure to their attorneys, thereby enabling "the latter to act more effectively, justly and expeditiously -- benefits out-weighing the risks of truth-finding posed by barring full disclosure in court." *State v. Ballard,* 333 N.C. 515, 522, 428 S.E.2d 178, 182 (1993)(internal citation omitted).

{34}    In *Miller,* the North Carolina Supreme Court considered—in the context of a pretrial criminal investigation—the State's contention that it should adopt "an interest of justice balancing test or an exception to the privilege which would allow a trial court to compel disclosure of confidential communications where the client is deceased[.]" 357 N.C. at 318-19, 584 S.E.2d at 776.

{35}    Chief Justice Lake's opinion in *Miller* informs my decision in this case:

> In assessing the adoption of a balancing test, as proposed by the State, we are cognizant of both the principal justification for such tests and the concerns for its application. Balancing tests provide trial courts with the flexibility to respond to unique circumstances and unanticipated situations. Bright-line rules, on the other hand, limit future judicial discretion and provide trial courts, and litigants, with predictability and consistency. A strict balancing test involving the attorney-client privilege[ ] . . ., subjects the client's reasonable expectation of nondisclosure to a process without parameters or standards, with an end result no more predictable in any case than a public opinion poll, the weather over time, or any athletic contest. Such a test, regardless of how well intentioned and conducted it may be, or how exigent the circumstances, would likely have, in the immediate future and over time, a corrosive effect on the privilege's traditionally stable application and the corresponding expectations of clients. . . .
>
> The attorney-client privilege is unique among all privileged communications. In practice, communications between attorney and client can encompass *all* subjects which may be discussed in any other privileged relationship and indeed all subjects within the human experience. As such, it is the privilege most beneficial to the public, both in facilitating competent legal advice and ultimately in furthering the ends of justice. We therefore conclude that the balancing test as proposed by the State is not appropriate and should not be applied under the circumstances of the instant case.

357 N.C. at 332-33, 584 S.E.2d at 785 (internal citations omitted).

{36}    While the facts of *Miller* are not analogous to the instant case, it provides substantial guidance. In particular, *Miller* suggests strongly that the *Hearn* balancing test advocated by the Plaintiff here would not find favor with our Supreme Court. As a result, I conclude that the analysis in *Rhone-Poulenc* is most consistent with the respect accorded to the attorney-client privilege in North Carolina.

{37}    Consistent with *Rhone-Poulenc,* BAS may obtain discovery of Evergreen's privileged communications only if Evergreen places the advice of its attorneys directly in issue in this case:

> Finding a waiver of the attorney client privilege when the client puts the attorney's advice in issue is consistent with the essential elements of the privilege. That is, in leaving to the client the decision whether or not to waive the privilege by putting the attorney's advice in issue, we provide certainty that the client's confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege, and we provide predictability for the client concerning the circumstances by which the client will waive that privilege. This certainty and predictability as to the circumstances of a waiver encourage clients to consult with counsel free from the apprehension that the communications will be disclosed without their consent.

32 F.3d at 863-64.

{38}    Evergreen has not put its attorney's advice directly in issue in this litigation.  Although I have not reviewed the privileged documents, Evergreen's counsel candidly conceded during oral argument that they may be relevant to some of the issues in dispute.  "Relevance[, however,] is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue."  *Id.* at 864.

{39}    Nor can I justify finding a waiver of privileged information merely to provide BAS with information that might prove helpful in discrediting Evergreen's fraud/negligent misrepresentation claims.  In the first place, nothing about the substance of the alleged misrepresentations here suggests that the Skadden lawyers are the exclusive source of unique information that would impeach Evergreen's claim of reasonable reliance.  *See e.g., Sedco Int'l, S.A. v. Cory,* 683 F.2d 1201, 1207 (8th Cir. 1982)(denying discovery of privileged material in fraudulent inducement action where moving party failed to show that opposing party's lawyers provided client with any special knowledge or expertise that could have made reliance unreasonable).

{40}    Moreover, BAS has not exhausted the many other discovery tools available to it to obtain impeachment evidence.[2]    In that regard, I emphasize that the specific facts surrounding Evergreen's purported reliance on the alleged misrepresentations are fair game for discovery, because the attorney-client privilege protects communications, but not the underlying facts.  *See, e.g., Standard Chartered Bank PLC,* 111 F.R.D. at 79-80.

{41}    In sum, while it is "always possible that the client's motive or conduct was influenced by something his attorney told him, . . . compelling the production cannot be justified solely as a means to check the [client's] statements."  *Remington Arms Co.,* 142 F.R.D. at 416.  *See also Chase Manhattan Bank, N.A. v. Drysdale Sec. Corp.,* 587 F. Supp. 57, 58-59 (S.D.N.Y. 1984)(declining to find waiver of privileged communications based on plaintiff bank's claim of fraud because the communications were not essential to establish what a reasonably prudent bank should have known or done under the circumstances).  And as for Plaintiff's claim that failure to allow such discovery may "'garble' the truth,"[3]    I remind counsel that they are officers of the court and, as such, have a paramount ethical duty not to assist their clients in committing perjury or otherwise misleading the Court.  *Remington Arms Co.,* 142 F.R.D. at 416.

{42}    Finally, the Court rejects Plaintiff's claim that it is entitled to discovery of otherwise privileged information because of Evergreen's alleged spoliation of evidence.  In the first place, BAS has failed to show that relevant evidence has been improperly destroyed.  Should the Court later determine that **either** party has failed to preserve relevant evidence, the proper remedy is to instruct the jury that it may infer that the missing information would harm the offending party's case.  *See Arndt v. First Union Nat'l Bank,* 613 S.E.2d 274, 281 (2005).

## CONCLUSION

{43}    For the reasons set forth above, the Court **DENIES** the Plaintiff's Motion to Compel discovery of Evergreen's privileged documents. The Court's ruling also prohibits Plaintiff from inquiring as to the contents of otherwise privileged information during any upcoming depositions.

      **SO ORDERED**, this 25th day of January, 2006.

---

[1]    The parties do not dispute that North Carolina law governs this question.

[2]    For this reason, I would reach the same result even if I applied the *Hearn* test, as I conclude that BAS has not shown that enforcing the privilege will deny it access to information that it cannot obtain through the normal discovery channels. "Vital" information necessarily implies that the information is unavailable from any other source. *Frontier Refining, Inc.* v. *Gorman-Rupp Co., Inc.*, 136 F.3d 695, 701 (10th Cir. 1998).

[3]    *See* Memorandum of Law in Support of Plaintiff's Motion to Compel at 9 (quoting *Small,* 152 F.R.D. at 512).