Richardson v. Frontier Spinning Mills, Inc., 2011 NCBC 39.

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF LEE                         10 CVS 4660

| | |
|---|---|
| CLAY VANCE RICHARDSON, et al., | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| FRONTIER SPINNING MILLS, INC., et al., | ) |
| Defendants | ) |


STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF LEE                         10 CVS 8307

| | |
|---|---|
| MURRAY C. GREASON, JR., et al., | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| FRONTIER SPINNING MILLS, INC., et al., | ) |
| Defendants | ) |

## <u>ORDER ON PLAINTIFFS' MOTION TO COMPEL</u>

THESE MATTERS, consolidated for discovery and pretrial purposes, are before the court on the captioned respective Plaintiffs' Motion to Compel Compliance with Subpoena and Compel Production of Documents (the "Motion"), filed on July 27, 2011, and

THE COURT, having reviewed and considered the Motion and the respective briefs propounded in support of and opposition to the Motion, FINDS and CONCLUDES that:

1. These civil actions arise from the sale (the "Sale") of Frontier Spinning Mills, Inc. ("Frontier"), a closely-held corporation in which Plaintiffs were minority shareholders. Frontier was sold to Sun Capital ("Sun"), a private equity firm.

2. Among other things, the Plaintiffs allege that the Defendants wrongfully caused the Sale to be structured so that shareholders of a single class of Frontier common stock were divided into two classes for sale and pricing purposes – the Plaintiffs ("Outside Shareholders") and the shareholding Defendants ("Inside Shareholders"). The Plaintiffs complain about the fact that the Outside Shareholders were paid less per share than the similarly situated Inside Shareholders when the Sale closed.

3. The Plaintiffs further allege that Defendants failed to disclose certain material facts concerning the Sale and affirmatively made materially misleading statements in order to create a sense of desperation about Frontier's financial condition prior to the Sale. They allege that this induced the Plaintiffs to accept a disproportionately lower share of the purchase price from the Frontier Sale.

4. Defendants contend that the Plaintiffs were informed fully about how the Sale was structured, including the disparate pricing of the shares held by Outside Shareholders and Inside Shareholders. Further, they contend that by signing a Stock Purchase Agreement ("SPA") and a separate release relative to the Sale, the Plaintiffs knowingly ratified and approved the very things they now are complaining about. Defendants further point out that the SPA contained a specific acknowledgement by Plaintiffs that they were approving the Sale knowing that they lacked certain "Seller Excluded Information" that either then was or later might come into the possession of

Sun and the Inside Shareholders. Defendants also contend that Plaintiffs should not be heard to complain because any Outside Shareholders who did not want to approve the Sale had a right to dissent and receive "fair value" for their shares pursuant to N.C. Gen. Stat. §55-11-04.[1]

5.	In responding to the substantive allegations of the Complaint, the Defendants have pled a number of affirmative defenses. One of those defenses is that Defendants were relying on the advice of counsel with regard to material parts of how the Sale was structured, including but not limited to the provision of two disparate purchase prices for the respective Frontier shares held by the Outside Shareholders and the Inside Shareholders. This defense has been raised both in the context of answers by one or more Defendants during oral depositions[2] and by the formal filing of a Sixth Affirmative Defense ("Sixth Defense"), allowed as an amendment to Defendants' Answer by Order of this court on June 29, 2011.[3] The Sixth Defense states that:

> In response to all Plaintiffs' claims based on allegations of illegal disparate treatment of "Outside Shareholders" and the "Inside Shareholders" and all Plaintiffs' Claims based upon allegations of insufficient material disclosures in the Stock Purchase Agreement and otherwise, which Defendants specifically deny, and if it is determined that there was *illegal disparate treatment of the "Outside Shareholder[s]" and the "Inside Shareholders"* or *insufficient material disclosure in the Stock Purchase Agreement and otherwise*, which the Defendants specifically deny, then Defendants assert that in

---

[1]	None of the potential dispositive substantive issues raised by Defendants' contentions are formally before the court at this time.

[2]	*See* testimony given by former Frontier CEO, George R. Perkins ("Perkins"), Perkins Dep. 125:23 – 126:11; and by former Frontier CFO, Barbara F. Walton ("Walton"), Walton Dep. 161:15-16.

[3]	Defendants have argued that the defense is not raised formally, and therefore no waiver is effected, by the act of a Defendant-deponent providing an answer that in substance says the Defendant relied upon the advice of counsel in undertaking certain actions with regard to the Sale. Rather, they argue that a privilege waiver can only arise when the advice of counsel is relied upon formally, and then only in the narrow context of the issue(s) raised by that reliance. The reported cases Defendants rely upon do not appear supportive of Defendants' position. However, in the context of this matter, given the broad form of the Sixth Defense, the court concludes that Defendants' position makes a distinction without a difference.

the discharge of any legal responsibilities with respect to these allegations, *they relied on the advice of counsel.*[4]

6.      The Plaintiffs contend that by raising the defense that Defendants relied upon the advice of counsel, Defendants have waived any attorney-client privilege or work-product privilege between them and counsel with regard to all aspects of the Sale.[5]  Specifically, Plaintiffs seek to discover information and to depose the Defendants and Frontier counsel, Jamie Clarke, Esq. ("Clarke"), of the firm Moore & Van Allen, PLLC ("MVA"), free of attorney-client or work-product privilege constraints.

7.      In response, the Defendants argue that any such waivers must be very narrowly limited in scope.  They contend that any waiver of the attorney-client privilege arising from the advice of counsel defense must be confined to specific communications that are related to the subject matter for which the defense is asserted.  Further, Defendants argue in substance that a waiver of the attorney-client privilege does not constitute a waiver of the work-product privilege, since the latter involves mental processes of the attorney and is not necessarily communicated to the client.  Among other things, they contend that unless work product was communicated to the client, it could not have been relied upon by the client and should not be discoverable as part of an attorney-client waiver.

8.      The deposition testimony of Perkins and Walton reflects broad reliance by Defendants upon the advice of counsel in the context of defending Plaintiffs' allegations in this civil action.  The Sixth Defense formally raises the advice of counsel defense in

---

[4] Am. Answer, Sixth Def. (emphasis added).
[5] Plaintiffs also contend that an "advice of counsel" defense, as apparently contemplated by N.C. Gen. Stat. § 55-8-42, is not available to all or some of the Defendants here.  Although that issue is not formally before the court at this time, for the limited purposes of this Order the Sixth Defense is deemed to be viable as to all Defendants.

three categories: (a) the alleged disparate share pricing treatment of Outside Shareholders and Inside Shareholders, (b) material disclosures in the SPA and (c) "otherwise." The first category, alleged disparate treatment of the respective shareholders, is relatively narrow and susceptible to reasonable definition. The second category, alleged insufficient material disclosures in the SPA, is not as narrow. In the context of the material allegations in the Complaint, it is not as susceptible to definition. The third category, "otherwise," is so broad as to be elusive of clear and reasonable definition.

## Attorney-Client Privilege

9. The attorney-client privilege long has been a fundamental principle of client-lawyer confidentiality.[6] It is one of the cornerstones of the trust that is the "hallmark of the client-lawyer relationship,"[7] and it is not cavalierly invaded by our courts. However, as Plaintiffs here contend, and Defendants concede, there is ample authority supporting the proposition that the act of raising an advice of counsel defense waives the attorney-client privilege with regard to certain matters in a particular dispute. *State v. Fair*, 354 N.C. 131 (2001); *Jones v. Marble Co.*, 137 N.C. 185 (1904)[8] The scope of the waiver is the thorny issue that has caused problems for courts and litigants. Plaintiffs argue for a broader waiver, relying heavily upon *Panter v. Marshall Field & Co.*, 80 F.R.D. 718 (D.C. Ill. 1978); and Defendants argue for a more narrow waiver. Although the reported cases are inconsistent, there is persuasive authority to the effect that such a waiver is limited to communications with counsel involving the

---

[6] Rules of Professional Conduct, Rule 1.6, n. 2, 3.
[7] *Id.* at n. 2.
[8] This reported case is cited as being located at 137 N.C. 237, and the Cases Reported directory of Volume 137 of the North Carolina Reports shows it as being published at p. 237. However, in reality it is published in Volume 137 at p. 185.

specific conduct complained of and ostensibly excused by the advice of counsel defense. According to such authority, the waiver does not include all communications between the client and counsel, but rather only those reasonably related to the conduct in question. This court, in *Bank of America Securities, LLC v. Evergreen International Aviation, Inc.*, 2006 NCBC 2 ¶ 27 (N.C. Super. Ct. Jan. 25, 2006), observed that an attorney's advice:

> does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. Instead, the advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication.

10. The problem presented in the instant matter is that, notwithstanding their arguments to the contrary, the Defendants have elected to raise the advice of counsel defense in a very broad fashion. It would not have been difficult to limit the factual context of the Sixth Defense, and potentially any resulting waiver of attorney-client privilege, by limiting the wording of the defense.[9] By example, the Sixth Defense could have been limited to advice relied upon with regard to the alleged disparate treatment of Outside Shareholders and Inside Shareholders. However, rather than limit the breadth and scope of the Sixth Defense, the Defendants took the opposite course. They broadly allege that they relied upon the advice of counsel relative to the disparate share pricing, any material disclosures in the SPA and "otherwise." Such broad language makes it extremely difficult for the court to define fairly and reasonably where any resulting waiver of the attorney-client privilege begins and ends. While there has been a waiver of the attorney-client privilege as to communications between the Defendants

---

[9] In view of this analysis, there is no need to determine what attorney-client waiver, if any, would have been effected by the deposition testimony of various Defendants had the Sixth Defense not been lodged.

and Clarke with regard to the Sale, the waiver is not without reasonable limitations, as reflected below.

11. Accordingly, the court CONCLUDES that, having raised the Sixth Defense in such a broad form, the Defendants have waived the attorney-client privilege as to all communications, in any form, between any Defendants and Clarke that took place on or before the March 17, 2008 closing of the Sale and which reasonably relate to:

      (a)     The mechanics of and manner in which the Sale was structured;

      (b)     The manner in which information concerning the Sale was disclosed to any of the Outside Shareholders;

      (c)     The legality of the Sale and its structure, including considerations of (i) the disparate pricing structure between Inside Shareholders and Outside Shareholders and (ii) the Seller Excluded Information provision in the SPA;

      (d)     The manner and level of information disclosed in or omitted from the SPA; and

      (e)     The risks and impact of fiduciary duty considerations on the part of any Defendants relative to the Sale.

Work-Product Privilege

12. The work-product privilege is another fundamentally important concept that supports and fosters the principle of client-lawyer confidentiality.[10] However, as is the case with the attorney-client privilege, the enforceability of the work-product privilege sometimes becomes an issue when a civil litigant elects to raise an advice of counsel defense.

---

[10] Rules of Professional Conduct, Rule 1.6, n. 3.

13.    As discussed above, the Defendants here vigorously argue that a waiver of the attorney-client privilege does not necessarily lead to a waiver of the work-product privilege.  The Plaintiffs argue to the contrary, contending that when reliance upon advice of counsel is raised defensively, one of the underlying fundamental issues is the reasonableness of the contended reliance.[11]  They argue that they should be entitled to discover attorney work product relevant to the advice ostensibly relied upon in order to examine the underlying good faith and reasonableness of that advice.  Plaintiffs' arguments are based upon the concepts of (i) waiver, as discussed above with regard to the attorney-client privilege and (ii) compelling need[12] as discussed below.

14.    This court is not aware of any reported North Carolina appellate cases directly on point on this issue.  However, other jurisdictions have held that in this context, fairness dictates the necessity for an examination of the underlying good faith and reasonableness of the advice itself, including the circumstances surrounding issuance of the legal opinion, and that relevant work product therefore loses its privilege protections.  In the final analysis, it does not make a substantive difference whether the underlying theory of production is one of waiver or of compelling need.  Either way, the privilege is overcome by the need for production.  *Panter*, 80 F.R.D. at 726; *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926 (N.D. Cal. 1976); *Garfinkle v. Arcata Nat.*

---

[11] Among other things, Plaintiffs cite N.C. Gen. Stat. § 55-8-42 for the proposition that to the extent the advice of counsel defense is available to a corporate officer, the officer must have reasonably believed that the advice was within the attorney's professional competence.

[12] Plaintiffs contend the production they seek is not restricted by the language of Rule 26(b)(3), which only applies, upon a showing of "substantial need" and "undue hardship," to production of materials prepared in anticipation of litigation or for trial and not constituting "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation in which the material is sought or work product of the attorney or attorneys of record in the particular action."  They contend that the materials they seek do not fall within the Rule 26(b)(3) discovery limitations because the materials (a) were prepared years ago and not in anticipation of litigation, (b) do not constitute mental impressions, etc. of an attorney or party representative concerning this particular litigation and (c) do not seek work product of an attorney of record for Defendants in this matter.

*Corp.*, 64 F.R.D. 688, 689 (S.D.N.Y. 1974). *See also Netalog v. Giffin Tech.*, 2006 WL 1666747, *3 (M.D.N.C. 2006). While not binding upon this court, those cases are instructive.

15. Accordingly, the court CONCLUDES that, in light of its determination that filing of the Defendants' Sixth Defense resulted in a waiver of the attorney-client privilege between Defendants and Clarke, the same filing (i) resulted in a waiver of the work-product privilege and/or (ii) gave rise to a compelling need for discovery by Plaintiffs with regard to Clarke's and MVA's work product while acting as Frontier legal counsel relative to the Sale. Therefore, Plaintiffs are entitled to discovery, as limited below, with regard to all notes, documents, e-mails, memoranda, communications or other materials, whether in tangible, electronic or other form, that reflect conversations between any Defendants and Clarke, or between Clarke and other attorneys at MVA, that took place on or before the March 17, 2008 closing of the Sale and which relate to:

(a) The mechanics of and manner in which the Sale was structured;

(b) The manner in which information concerning the Sale was disclosed to any of the Outside Shareholders;

(c) The legality of the Sale and its structure, including considerations of (i) the disparate pricing structure between Inside Shareholders and Outside Shareholders and (ii) the Seller Excluded Information provision in the SPA;

(d) The manner and level of information disclosed in or omitted from the SPA; and

(e) The risks and impact of fiduciary duty considerations on the part of any Defendants relative to the Sale.

NOW THEREFORE, based upon the foregoing FINDINGS and CONCLUSIONS, Plaintiffs' Motion is GRANTED, in part, and it is ORDERED that:

1.     On or before November 16, 2011, upon appropriate notice given, the Plaintiffs may depose Defendants and Clarke with regard to all communications, in any form, between any Defendants and Clarke that took place on or before the March 17, 2008 closing of the Sale and which reasonably relate to:

(a)     The mechanics of and manner in which the Sale was structured;

(b)     The manner in which information concerning the Sale was disclosed to any of the Outside Shareholders;

(c)     The legality of the Sale and its structure, including considerations of (i) the disparate pricing structure between Inside Shareholders and Outside Shareholders and (ii) the Seller Excluded Information provision in the SPA;

(d)     The manner and level of information disclosed in or omitted from the SPA; and

(e)     The risks and impact of fiduciary duty considerations on the part of any Defendants relative to the Sale.

2.     With regard to the foregoing testimony, neither Defendants nor Clarke shall fail to respond to propounded questions upon claim of attorney-client privilege.

3.     On or before October 26, 2011, Defendants, Clarke and MVA shall produce to Plaintiffs all notes, documents, communications or other materials, whether in tangible, electronic or other form, that reflect conversations between any Defendants and Clarke, or between Clarke and other attorneys at MVA, that took place on or before the March 17, 2008 closing of the Sale and which relate to:

(a)     The mechanics of and manner in which the Sale was structured;

(b)     The manner in which information concerning the Sale was disclosed to any of the Outside Shareholders;

(c)     The legality of the Sale and its structure, including considerations of (i) the disparate pricing structure between Inside Shareholders and Outside Shareholders and (ii) the Seller Excluded Information provision in the SPA;

(d)     The manner and level of information disclosed in or omitted from the SPA; and

(e)     The risks and impact of fiduciary duty considerations on the part of any Defendants relative to the Sale.

4.     With regard to the foregoing production, neither Defendants, nor Clarke nor MVA shall fail to respond upon claim of work-product privilege.

5.     The Case Management Order in this matter will be amended under separate Order of even date herewith to accommodate the foregoing discovery.

6.     Except as ORDERED herein, Plaintiffs' Motion is DENIED.

This the 6th day of October, 2011.